No. 6096.

THE CITY OF AUSTIN *v.* AUSTIN GAS LIGHT AND COAL COMPANY.

1. TAXATION.—When a power is conferred on a city by the Legislature to levy and collect taxes for designated objects, and no express power is conferred to exempt any specific property within the city which the city is authorized to tax, from taxation, a contract between the city government and the owner of such specific property to exempt it from taxation. is void.

2. SAME.—The requirement of the State Constitution that all property in the State shall be taxed in proportion to its value, and that taxes shall. be equal and uniform, controls municipal as well as State taxation. The assumption by a city council of the power to exempt property from taxation is *ultra vires*, and violative of the Constitution.

3. SAME.—The power to commute taxes is but an incident of the power to exempt. When the power to exempt does not exist, the power to commute can not be exercised.

4. TAXATION—STATUTE CONSTRUED.—After the city of Austin had assumed control of its public free schools, its voting inhabitants determined by vote that a tax of two mills on the dollar should be levied for the support of such schools. Afterwards, in 1883, a majority of the voters voted

in favor of a proposition to levy "a special additional annual tax of one and one-third mills upon the dollar, upon all property made taxable by law in the city of Austin for public free school purposes within the limits of the city." The statute provided that when such an election is held "the proposition submitted may be for a tax not exceeding one-half of one per cent, or it may be for a specific per cent." *Held:* That the proposition submitted at the election of 1883 was, within the spirit of the statute, a proposition to authorize the levy and collection of a "specific per cent."

5. CONSTITUTION CONSTRUED.—The leading purpose of the act of March 26, 1881, was to empower towns and cities, however incorporated, to levy and collect a tax for the maintenance of the public free schools, when the city or town, under the provisions of the act of April 3, 1879, had become a s'parate and independent school district; and the title of the act of March 26, 1881, must be construed to embrace but one subject, though it professes to amend the Revised Statutes by adding a new article.

6. STATUTE CONSTRUED.—Title 17 of the Revised Statutes applies to towns and cities incorporated prior to the passage of the act of March 15, 1875, as true as to those which might be incorporated after its adoption.

APPEAL from Travis. Tried below before the Hon. A. S. Walker.

*George F. Pendexter,* for appellant, contended that the court erred in overruling defendant's general demurrer to plaintiff's original petition, because the contract set up in said petition and entered into between T. B. Wheeler, mayor of the city of Austin, and Sylvester Watts, by which the property of the plaintiff was exempt from city taxes, was against public policy, *ultra vires,* and null and void, and afforded plaintiff no relief from defendant's claim for taxes; citing State v. Hannibal & St. Joe Railroad Company, 75 Missouri, 208; Louisiana Cotton Manufacturing Company v. New Orleans, 31 La. Ann., 447; City v. Lafayette Insurance Company, 28 La. Ann., 756; City v. St. Charles Company, 28 La. Ann., 498; State v. Gracey, 11 Nevada, 223; Halls v. Hellmer, 12 Nebraska, 87; Knowleton v. Supervisors, 9 Wisconsin, 410; Weeks v. Milwaukee, 10 Wisconsin, 599; Brewer Brick Company v. Brewer, 62 Maine, 62; Zanesville v. Auditor, 5 Ohio State, 589.

That the contract by which plaintiff was relieved from taxes, in consideration of a discount allowed on gas consumed by the city, was *ultra vires* and void, he cited Louisiana Cotton Manufacturing Company v. New Orleans, 31 Louisiana Annual, 447; City v. Lafayette Insurance Company, 28 Louisiana Annual, 756; City v. St. Charles Company, 28 Louisiana Annual, 498; Halls v. Hellmer, 12 Nebraska, 87; Memphis Gaslight Company v. Shelby

County, 109 United States, 398; American and English Corpora-
tion Cases, 411; Louisville & Nashville Railroad Company v.
Palmer, 109 United States, 245; Cooley on Taxation, 52–54, and
note, 152; 1 Desty on Taxation, 144.

*Sneed & Burleson,* for appellee: On their proposition that the
city of Austin did have the authority, by the contract declared
on, to grant the exemption to appellee from the payment of the
ordinary ad valorem revenue taxes on the terms and conditions
stated in the contract, cited act incorporating the city of Austin,
approved April 5, 1873, article 6, subdivision 7 and 10; Revised
Statutes, articles 629, 630; Paschal's Digest, articles 5992, 5993;
City of Palestine v. Barnes, 50 Texas, 538; Anderson County v.
International & Great Northern Railroad Company, 59 Id., 654;
Stein v. Mayor, 49 Alabama, 260; Nebraska City v. Nebraska
City Gas Company, 2 Nortwestern Reporter, 870; Grant v. Daven-
port, 36 Iowa, 396; 1 Desty on Taxation, section 29, page 127, et
seq.

That when the contract in question was entered into, the Con-
stitution of 1870 was in force. There was no inhibition in that
Constitution against exemption from taxation. By it, taxes were
required to be equal and uniform, etc. The contract in this case
is not violative of that rule; citing Constitution of 1870, article
12, section 19; Anderson County v. International & Great
Northern Railroad Company, 59 Texas, 654; Portland v. Water
Company, 67 Maine, 135; Gardner v. State, 21 New Jersey Law,
557; Daughdrill v. Insurance Company, 31 Alabama, 91; Illi-
nois Central Railway Company v. McLean County, 17 Illi-
nois, 291; State Bank v. People, 5 Illinois, 303; Louisiana State
Lottery v. New Orleans, 24 La. Ann., 86.

That appellee having furnished appellant with all gas required
by appellant for public purposes from June, 1874, when the
works were completed, at a discount of ten per cent and more,
below the price charged private consumers, down to and includ-
ing the year 1885, and such discount for the years 1884 and 1885
being greater in amount than the taxes for these two years, and
said gas having been accepted and used by appellant at the re-
duced rates, even if the contract was *ultra virus,* appellant can
not recover the taxes for said two years without paying to appel-
lee the discount or rebate on the price of gas for said years re-
ceived and used by appellant, they cited The City of Brenham v.
Brenham Water Company, 67 Texas, 542; Chicago Building

Society v. Crowell, 65 Ilinois, 458; De Groff v. Am. Lin. Th. Company, 21 New York, 127, 128; Parish v. Wheeler, 22 New York, 503; Green's Brice's Ultra Vires, note, page 608; Morawetz on Private Corporations, second edition, volume 2, section 686.

That it is declared by article 341 (R. S.), title 17, chapter 1: "The provisions of this title shall not apply to any city until such provisions have been accepted by the council in accordance to the preceding article."

Instead of the body of the act confining its amendments to chapters 5 and 11 of said title 17, relating to municipal corporations created under the general laws, it undertakes to amend every special act of incorporation of the cities and towns of this State, whether incorporated by acts of the Republic or State of Texas. The city of Austin was incorporated by special act. This latter subject is not stated in the title of the act; cited Constitution of 1876, article 3, section 35; Cooley's Con. Lim., chapter 6, page 170, et seq.; Stone v. Brown, 54 Texas, 336; Cox et al. v. State, 8 Ct. App., 260; Ex Parte Mabry, 5 Ct. App., 94; Giddings, Administrator v. San Antonio, 47 Texas, 549; San Antonio v. Gould, 34 Texas, 78.

STAYTON, ASSOCIATE JUSTICE.  In pursuance of an ordance of the city council, approved November 3, 1873, the mayor of the city of Austin entered into a contract with one Sylvester Watts, which provided as follows: 1.  "That Sylvester Watts, of St. Louis, Missouri, his assigns, associates or successors, shall have the exclusive right to erect, operate or maintain gas works within the limits of the city of Austin and the additions thereto, and the exclusive right and privilege for laying gas pipes within the limits of said city and the additions thereto, and in and along any street, lane, alley or common in said city, provided the same shall be left in good condition."

2.  "That all such grants, rights and privileges shall be enjoyed only upon condition that said Watts or his associates, assigns or successors shall furnish to the people of the city of Austin a good article of coal gas of not less a standard than fifteen candles, at a price not to exceed seven dollars per one thousand cubic feet; provided that in the event gas shall at any time hereafter be furnished to the citizens of the city of Austin by any other person or company, than the corporate authorities of said city at less than seven dollars per one thousand feet then the maximum price of gas in the city of Austin shall not

exceed the latter price so charged, provided that at no time shall the price of gas in Austin exceed seven dollars per one thousand cubic feet."

The fifth section of the ordinance, which, with all other parts of the ordinance as embodied in and made a part of the contract, provided that "all the rights, grants and privileges contained in this ordinance shall extend and be in full force for a period of twenty-five years from the date said gas works shall be first operated. It is further provided that "said Watts or his associates, assigns or successors shall furnish the city of Austin with all gas for such public purposes as may be required by the city council, at ten per cent less than the amount charged to private consumers. In consideration of said deduction in price of gas, the said gas works, together with all offices, buildings. lots, stocks, bonds, fixtures or appurtances pertaining to said gas works, shall be and the same are hereby exempted from any and all taxation by this city during such time as said Watts or his associates, assigns or successors shall faithfully comply with the provisions of this ordinance.'

Watts erected the gas works, put the same in operation and complied with the contract until May 22, 1883, when he conveyed the same, together with all rights and privileges conferred upon him by his contract with the city, to the "Austin Gas Light and Coal Company," a private corporation incorporated under the laws of this State. Since May, 1884. the mayor of the city of Austin has refused to recognize the validity of the contract between Watts and the city, to which time the gas company had furnished gas in accordance with the contract; but since that date gas has been furnished to the city on special contracts, which, however, enabled the city to procure gas at ten per cent less than other customers paid.

So far as the city was concerned, it does not appear that the special contracts for gas were in any manner influenced by the existence of the contract made with Watts; but the gas company evidently made the same charges for gas, under the special contracts, that it would have been entitled to make if the contract between Watts and the city were valid.

The city of Austin, having taken charge of the public schools within its limits, for the years 1884 and 1885, levied a tax of one third of one per cent on all of the gas company's property within the city limits subject to taxation under the general laws of the State, for the benefit of its public free schools; and it also levied

an ad valorem tax of one per cent on the same property for municipal purposes generally.

This suit was instituted by "Austin Gas Light and Coal Company" against the city and its tax collector to restrain them from selling certain property which the collector had seized and was about to sell to satisfy the taxes due for the years named; and, further, to restrain the city from levying and collecting city taxes in the future on any of the company's property within the city. The case was tried without a jury, and the findings of fact were, omitting such findings of fact as are embraced in the statements already made, as follows:

"For the years 1884 and 1885 the city, in abatement in prices of gas furnished the city, has had in value an excess of the amount of city taxes upon the whole of the property of the plaintiff company.

"The assessment upon the entire property for 1884 is twenty-three thousand seven hundred dollars; for 1885 is thirty-one thousand five hundred dollars. Upon the lot without improvements for 1884 is two thousand one hundred dollars, and for 1885 is two thousand one hundred dollars. The school tax for 1884 was one-third of one per cent, aggregating seventy-nine dollars, and for 1885 was one-third of one per cent, aggregating one hundred and five dollars. The ad valorem for both years is one per cent ordinary revenue."

As a matter of law the court held as follows:

"1. The contract between the city and Watts, commuting taxes for an equality of value in rates, or against a greater sum in gas rates upon gas actually had, was not illegal, and it was in the power of the city to contract for the construction of gas works upon such contract.

"2. The city having had the excess in value over the taxes for two years, can not disregard its contract, and, while receiving such greater money benefit, exact again the taxes upon the machinery, etc., so introduced by Watts and the successor, the plaintiff company.

"3. For the lot, without improvement, the company owes taxes, and the contract does not apply to the school tax levied under the laws and present Constitution."

5. "Judgment will be rendered dissolving injunction as to the school taxes and upon the lot, and that defendant receive the taxes for 1884 and 1885 upon the lot, and the school taxes for said years upon the entire property, and perpetuating the injunc-

tion for the ad valorem taxes for the years 1884 and 1885 upon the machinery, etc., of the plaintiff company, plaintiff to recover costs." From the judgment entered in accordance with these findings of law both parties appealed.

The contract, before referred to, was made a part of the petition and a demurrer to it was overruled, and this is assigned as error. The same questions raised by the demurrer are raised by other assignments, which call in question the correctness of the findings of law by the court below. The first and second assignments raise the question of the power of the city of Austin to make the contract exempting the property of the gas company from taxation.

The parts of the charter of the city of Austin relating to its power to tax are as follows:

"Article 6. The mayor and city council shall have power, within the city, by ordinance: First. To levy and collect an annual tax, not exceeding one per centum *upon all property* within the city taxable by law for State and county purposes."

The amended charter, approved April 7, 1873, which enlarged the city limits, provides as follows: "That the city council of said city of Austin shall have power to levy and collect an ad valorem tax on all property within the territory included in section 1 of this act, for the year 1873 and succeeding years, in the same manner as is provided by the act to which this is an amendment." (Gen. Laws 1873, p. 235.) There is nothing in the charter expressly giving to the city the power to exempt any property from taxation.

The seventh section of article 6 of the charter gives to the city power "to construct water works, gas works and street railroads, within or beyond the city limits, or both; to provide the city with water and gas, and to erect hydrants, fire plugs and pumps in the streets; to erect the necessary machinery, lamp posts, etc., for lighting the city, within or beyond the limits of the city, for the convenience of the inhabitants of the city and environs." The tenth section of the same article declares that the city shall have power "to provide for the lighting of the streets and erecting lamps thereon." It is not claimed that there is anything in the general law under which the gas company was incorporated which would confer power on the city to make the contract relied on to give the exemption; and the only provision in the general law declaring what powers gas or water corporations incorporated under it shall have, are found in articles 629 and 630

Revised Statutes. By article 630, municipal corporations have the power to contract with a gas company for lighting streets and other public places, and article 629 empowers gas companies "to sell and furnish" such quantities of gas to an incorporated town or city as it may need for public purposes.

The Legislature was empowered by article 12, section 19, of the Constitution, in force at the time the contract relied on in this case was made, to exempt from taxation such property as two-thirds of both houses of the Legislature might think proper to exempt; but as it can not be claimed that the Legislature attempted to confer a like power on the city council of the city of Austin, it becomes unnecessary to inquire whether the Legislature could have delegated to it such a power. The power conferred on the city of Austin to levy and collect taxes was a power which it was intended should be exercised by the mayor and city council from time to time, as it might be deemed necessary; and this power could not be surrendered by contract or otherwise, unless the Legislature had, and exercised, the power to permit the city to surrender it by way of exempting property from taxation.

The Legislature never having attempted to confer upon the city of Austin the power to exempt any property which it was authorized to tax, the contract relied upon, in so far as it attempted to give the exception claimed, must be held void. (The State v. Railroad Company, 75 Missouri, 210; Prim v. City of Belleville, 59 Ill., 142; Boody v. Watson, 63 N. H., 320; Memphis Gas Company v. Shelby County, 109 U. S., 398; Noyzlett v. The City of Mount Vernon, 33 Tenn., 232; Weeks v. City of Milwaukee, 10 Wis., 206; Hallo v. Helmer, 12 Neb., 94; City of New Orleans v. Railroad Company, 28 La. Ann., 498; Cooley on Taxation, 153; Dillon on Municipal Corporations, 776; Desty on Taxation, 466.)

The declarations of the Constitution that "taxes shall be equal and uniform throughout the State," and that "all property in the State shall be taxed in proportion to its value," except as the Legislature was authorized, by a two-thirds vote of both houses, to change these rules by exempting property from taxation, controlled municipal as well as State taxation; and, in the absence of legislation clearly expressing an intention to authorize the city council of the city of Austin to exempt property from taxation, if it be conceded that the Legislature might have done this, it must be held that the assumption of such a power

by the city council was not only an act *ultra vires*, but an act in violation of the substantial provisions to which we have referred. (The State v. Railroad Company, 75 Missouri, 211; Primrose v. City of Belleville, 59 Ill., 142; Weeks v. City of Milwaukee, 10 Wis., 200; Cooley on Taxation, 251; Desty on Taxation, 481.)

It is urged that the contract in question did not give an exemption from taxation, but that by way of commutation the gas company paid and agreed to pay to the city, through the deductions to be made in favor of the city from the prices paid by other customers for gas, a sum equal to or greater each year than would be the taxes on the company's property, and that, therefore, the contract was not invalid. This proposition we think unsound. The power to commute taxes, as said by the Supreme Court of Louisiana, is but an incident of the power to exempt; and, when the latter does not exist the incidental power must be denied. (City of New Orleans v. Railroad Company, 28 La. Ann., 498; Manufacturing Company v. New Orleans, 31 La. Ann., 447.) The thing given or paid in commutation is but the price paid for exemption from liability to do some act or to pay some other sum. The charter of the city does not in terms or by fair implication authorize an exemption or commutation; but, on the contrary, does empower the city to collect an ad valorem tax on all property within the limits of the corporation, subject to taxation for State and county purposes, thereby indicating the mode by which must, as to taxes upon property, be determined the burden which such property owner shall bear. This, in our opinion, indicates a legislative intention to withhold from the municipal authorities the power to apportion the burdens on property in a manner, as to one or more persons or corporations, different to that which must be followed in the levy and collection of an ad valorem tax.

Were there a provision in the charter of the city authorizing it to commute taxes, it might be held that the city would have the power to give the thing for which the price paid in commutation was given—the exemption—and the question would then arise whether under the terms of the Constitution then in force, such legislation would be valid ; but as there is no such provision, no such question arises. It is generally held that exemptions from taxation when purely voluntary and without consideration may be revoked by the legislative authority which gives them, but when such exemptions are upon consideration, as in commutation, it is held that they are entitled to protection as

contracts; and, that they can not be reached at the mere will of the legislature. When, however, the power to give the exemption does not exist, no contract can arise, however valuable may have been the thing paid or given by way of commutation for the exemption desired.

There can be no essential difference, in principle, between the rights of the city to levy and collect the taxes claimed by it on the lots owned by the gas company, and on its other property within the city limits. Under the law the one was as much subject to taxation as the other, and the court below erred in holding to the contrary.

The temporary injunction should have been dissolved and the bill dismissed, unless the matters presented by the assignments of error filed by the gas company require some modification of the decree. The contract for exemption being invalid and of no binding force whatever, the appellee must be held to have sold gas to the city at the price which it paid, and to have been thus fully compensated therefor.

The petition alleged, in substance, that some time in the year 1880 the city of Austin, in the manner prescribed by law, assumed the control of the public free schools within its limits, and that thereafter, under a proclamation issued by the mayor, an election was held to determine whether a tax of two mills on the dollar should be levied for the support of such schools. It further alleges that this election was held on September 6, 1881, and that the requisite vote was declared, by the proper authority, to have been cast in favor of levying and collecting that tax; but that, in pursuance of an ordinance, another election was ordered to take place on November 7, 1882, for the purpose of voting on a proposition to levy one-third of one cent on the dollar annually to maintain public free schools within the city, at which there was a majority of votes against the proposition. The petition then alleges that, in pursuance of an ordinance approved November 9, 1883, the mayor ordered an election to be held on December 3, 1883, "for the purpose of voting for or against the levy of a special additional annual tax of one and one-third mills upon the dollar of all property made taxable by law in the city of Austin, Texas, to aid in establishing and maintaining an efficient system of public free schools in the limits of the city of Austin, Texas," which election, it is alleged, was held on the day named, and that after this the returns of the election were canvassed by the city council, which declared and decided

that the election had resulted in favor of the proposition to levy the special additional annual tax of one and one-third mills upon the dollar on property situated within the city.

The taxes for school purposes, in controversy in this case, were levied under the authority claimed to have been conferred on the city council by the elections held in the years 1881 and 1883, and to so much of the petition as set up the illegality of taxes the court below sustained a demurrer, and this ruling of the court is assigned as error. The objection urged is, that the election held in 1883 did not submit to the voters a proposition to levy and collect a tax not to exceed one-half of one per cent ad valorem, nor a proposition to levy and collect a specific per cent of tax. The statute provides that "the proposition submitted may be for a tax not exceeding one-half of one per cent, or it may be for a specific per cent."

The voters of the city must be presumed to have known what taxes the city was authorized to levy for public free school purposes prior to the time the election was held on December 3, 1883, and they must be presumed to have known that the tax authorized before that date was a special tax, and with this knowledge, they must have understood that "a *special additional annual tax* of one and one-third mills on the dollar upon all property made taxable by law in the city of Austin, Texas, to aid in establishing and maintaining an efficient system of public free schools within the limits of the city of Austin, Texas," if voted for, would empower the city council to impose upon them a special tax of one-third of one per cent on the dollar for public free school purposes. We think the proposition submitted was, within the spirit, if not within the letter, of the statute, a proposition to authorize the levy and collection of a "specific per cent." It was not a proposition likely to mislead.

It is urged, however, that as the people at the preceding election had refused to vote for the levy and collection of a tax of three and one-third mills on the dollar for school purposes, they must have been unwilling to consent to so large a tax. This does not follow; for the people may have thought when called upon to vote a tax of three and one third mills, that this would be in addition to the two mills which the city was authorized to collect under the former election, which would have given a tax greater than permitted by law, or they may have changed their minds.

It is further suggested that the voters may have understood

that the tax to be voted was additional to the pro rate available school fund received from the general revenue of the State for school purposes, and not a special tax in addition to the special tax which the city was already authorized to collect for school purposes. This is not likely or in any degree probable, but were it so it could not change the result; for at all events it must have been understood by the voters to authorize the city to levy a tax of one and one-third mills on their property for school purposes in addition to the taxes of whatever character that might be levied upon them for that purpose without their further consent given at an election; and they must have known that there was nothing in the proposition submitted to them which would withdraw from the city or the State the right to levy taxes already authorized by the general laws, or by the election held in 1881.

The leading purpose of the act of March 26, 1881, was to empower towns and cities, however incorporated, to levy and collect, annually, a tax for the maintenance of public free schools, where the city or town, under the provisions of the act of April 3, 1879, had become a separate and independent school district; and we are of the opinion that the title of the act, within the spirit of the Constitution, embraces but one subject, although it professes to amend the Revised Statutes by adding a new article.

It is erroneous to assume that title 17 of the Revised Statutes has no application to towns and cities incorporated prior to the passage of the act of March 15, 1875; for one of the leading purposes of that title was to furnish to towns and cities having one thousand inhabitants or more, through a general law, means through which they might acquire powers which the charters under which they were then existing did not give. Such being the purpose of the title, an amendment to it which only enabled such towns and cities to acquire the specific power to levy and collect a special tax for school purposes is not foreign to it.

No question arises, necessarily, as to the validity of that part of the contract relied upon which assumed to give to the appellee exclusive rights and privileges.

The assignments of error presented by the appellee show no reason why the entire taxes which the city was attempting to collect are not lawful, and the judgment of the district court will be reversed and here rendered dissolving the injunction and dismissing the appellee's bill. It is so ordered.

*Reversed and dismissed.*

Opinion adopted November 15, 1887.