MOERSCHELL v. CITY OF EAGLE LAKE et al. (No. 8081.) *

(Court of Civil Appeals of Texas. Galveston. Nov. 11, 1921. Rehearing Denied Jan. 19, 1922.)

**1. Schools and school districts ☞106—City held authorized to sue for taxes for maintenance of independent district after municipal district abolished.**

Under a special act (Loc. & Sp. Laws 1913, c. 138), creating an independent district as a substitution for a municipal district, and providing that any tax for 1913 and prior years, by the city council, for the maintenance of schools of the district, then uncollected, should be collected and paid by the tax collector of the city to the treasurer of the district, *held* to authorize the city to sue for the taxes, notwithstanding the abolition of the old municipal district.

**2. Schools and school districts ☞106—City can sue to collect bond and sinking fund taxes to retire bonds issued by abolished municipal district.**

Where a municipal district was abolished and an independent district with added territory was substituted, the city could sue for the collection of bond and sinking fund taxes without any special authority; the tax having been levied to create a sinking fund for the retirement of bonds previously issued by the old municipal district and which had never been assumed by the new district.

**3. Appeal and error ☞1036(1)—Permitting city to sue for taxes on bonds of abolished municipal school district, if error, held harmless.**

Where a city was permitted to sue to enforce payment of bond and sinking fund taxes to retire bonds issued by an abolished municipal school district, the error, if any, was harmless, where the independent school district which had been substituted for the municipal district was permitted to intervene; the recovery being apportioned between the city and the intervener.

**4. Municipal corporations ☞38—Act permitting city to extend boundaries for school purposes held not unconstitutional.**

Rev. St. art. 2883, authorizing a city to extend its boundaries for school purposes, and an ordinance passed by virtue thereof, *held* not unconstitutional as contravening Const. art. 11, § 10, nor article 7, § 3, on the ground that such sections prohibited the control by an incorporated city or town of its schools beyond its municipal corporate limits.

**5. Schools and school districts ☞106—Burden of showing insufficiency of petition for extended district held on defendant in tax proceedings.**

On foreclosure of a tax lien by a municipal corporation upon property outside the corporate limits and within the limits of an extended school district, the burden was on defendant to show affirmatively that the ordinance extending the city limits was void because based on the petition of a majority of the voters of the extended district as a whole instead of upon the petition of the voters of the additional territory.

**6. Judgment ☞707—Decree in receivership proceedings held not to bar claim for taxes by city not a party.**

That a judgment in a receivership proceeding directed certain property to be sold, the proceeds to go to the payment of secured debts after paying other claims, including one for taxes, *held* not to bar the preference lien for taxes by a city which was not a party to the receivership proceeding.

**7. Schools and school districts ☞103(4)—Levy for school purposes held not excessive.**

In a proceeding by a city to collect school district taxes, a claim of excessive levy *held* not sustained under Const. art. 7, § 3, as amended in 1908.

**8. Schools and school districts ☞103(2)—Election held sufficient in form to authorize levy of school taxes.**

That an election was held to determine whether the 50 per cent. upon the $100 valuation maintenance tax for schools theretofore voted should be continued or discontinued instead of a proposition to vote for or against the levy of such a tax, *held* not to make the election insufficient as authority for the levy and assessment of a tax; Rev. St. arts. 2875–2877, not prescribing the form in which the proposal should be submitted.

**9. Pleading ☞406(7)—Ordinance extending limits of city for school purposes held sufficiently pleaded in absence of exception.**

In an action by a city to foreclose tax lien as to school taxes under an ordinance extending the limits of the city for school purposes, it was sufficient, as a pleading of the extension ordinance, to set out its substance with the averment that the territory as so extended included defendant's property, in the absence of a special exception calling for a more particular description.

Appeal from District Court, Colorado County; M. Kennon, Judge.

Suit by the City of Eagle Lake against C. B. Barbe, receiver of the Lakeside Sugar Refining Company, who was later dismissed and Jacob W. Moerschell substituted as party defendant, wherein the Eagle Lake Independent School District intervened. Judgment for plaintiff and intervener, and defendant appeals. Affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused March 1, 1922.

Grobe & Miller, of Columbus, for appellant.

Emanuel Roos, of Eagle Lake, and Wurzbach, Wirtz & Weinert, of Seguin, for appellees.

GRAVES, J. "This suit was brought by appellee, city of Eagle Lake, as plaintiff below, originally against C. B. Barbe, receiver of Lakeside Sugar Refining Company, who was later dismissed, and the appellant, Jacob W. Moerschell, substituted as a party defendant.

"Plaintiff sought the foreclosure of a tax lien on 50 acres of land and improvements described in the petition, alleging that it (plaintiff) was a municipal corporation, duly incorporated under and by virtue of the general laws of Texas relating to cities and towns of 1,000 inhabitants or over, and as such corporation had taken charge of the public schools within its limits prior to the year 1907, and continually had charge thereof from such date until the municipal school district was abolished by the act (Loc. & Sp. Laws 1913, c. 138), creating the Eagle Lake independent school district on July 21, 1913; that on September 3, 1907, plaintiff by ordinance duly passed, extended its limits for school purposes only; that the property on which the lien was sought to be foreclosed was outside the municipal limits, but within the limits of the district as extended; that the municipal district, including the extended territory, voted schoolhouse bonds, which were issued by the city and sold by it, and which are still outstanding, and levied a tax of 15 cents on the $100 valuation of all taxable property in the district to pay interest on such bonds and to create a sinking fund to retire them at maturity, which tax was levied and assessed against the property on which the lien was sought to be foreclosed during each of the years 1910, 1911, 1912, and 1913, during which years the Lakeside Sugar Refining Company was the owner of the property; that on May 4, 1912, this municipal district voted on itself a tax of not exceeding 50 cents on the $100 valuation of all taxable property of the district for the maintenance of its public schools, and that by virtue of the authority conferred by such vote an ad valorem tax of 30 cents on the $100 valuation was levied and assessed by the city of Eagle Lake for the year 1912, and 40 cents for the year 1913, on all taxable property of the district, including the property described in the petition. Plaintiff set forth in detail the different steps by which the territory was extended for school purposes, the bonds and maintenance tax voted, taxes levied and assessed, publication of the delinquent roll, amount assessed against the property, amount of taxes, interest, penalty, and costs due, and the statutory steps taken for the fixing and preservation of the tax lien. Defendant, Moerschell, was the owner of the property at the time he was made a party defendant to the suit. No personal judgment was sought against him, but only a foreclosure of the tax lien. The Eagle Lake independent school district intervened, alleging that it had succeeded to all the property and rights of the city of Eagle Lake district, and praying that the city of Eagle Lake be permitted to prosecute this suit for the benefit of the independent school district, or, in the alternative, that intervener be allowed to further prosecute the suit in its own name. By trial amendment, plaintiff alleged that the suit was brought for the benefit of intervener as to such part of the fund as it was entitled to receive, and asked that recovery thereof be for the benefit of intervener.

"The defendant, appellant herein, answered, by plea in abatement, that plaintiff could not maintain the suit but that it could only be maintained by intervener. Eagle Lake independent school district, by general and special demurrers, general denial, and special pleas, by which pleas he set forth the following defenses viz.: (1) That no proper election had been held subsequent to the extension of the corporate limits for school purposes which would authorize the levy and assessment of a maintenance tax; (2) that the intervener, Eagle Lake independent school district, had become legally established on April 21, 1913, so as to include all the territory of the old city district and had succeeded to all its rights and property, and that the old district had no authority to levy a tax for the year 1913, and that the taxes levied for the year 1913 exceeded the constitutional limits of 50 cents, and that by virtue of the establishment of such independent school district plaintiff had no further interest in the subject-matter of the suit; (3) that the extension of its boundaries for school purposes only by the city of Eagle Lake was void; and (4) that after such extension the city had no control over the schools and no authority to levy and assess taxes for school purposes.

"The cause was submitted to the court without a jury on an agreed statement of facts, and the court rendered judgment for plaintiff for a foreclosure of its tax lien on the property described for the payment of bond and sinking fund taxes for the years 1910, 1911, 1912, and 1913, and maintenance taxes for the year 1912, with penalty, interest, and costs thereon accruing, providing that such recovery as to maintenance taxes for the year 1912 should be for the benefit of intervener."

The statement thus given has been taken from the brief for the appellees filed in this court. The total amount for which the tax lien was so established and foreclosed was $2,049, with 6 per cent. per annum interest thereon from the date of the decree, $538.-20 of which was adjudged to be for the bene-

fit of the intervener, the Eagle Lake independent school district. Findings of fact in substantial accord with the preceding statement and conclusions of law were filed by the trial judge at the request of appellant, to the former of which no exceptions have been presented.

In this court, however, the judgment so rendered against him below is assailed by appellant as having been erroneous upon the law of the case for a number of reasons; the main ones being:

(1) That the power to maintain this suit lay in the trustees of the Eagle Lake independent school district, the intervener, and not in the plaintiff, city of Eagle Lake, for the reason that the city was without authority either to levy or collect any of the taxes recovered for after the abolishment of the old municipal school district and the creation of the intervener as its successor.

(2) That the city ordinance of September 3, 1907, whereby the city of Eagle Lake extended its corporate limits for school purposes only, in which extension appellant's property lay, and article 2883 of the Revised Statutes of Texas, by virtue of which this ordinance was passed, are in contravention of article 11, § 10, of the state Constitution.

(3) That this extension ordinance of September 3, 1907, was shown on its face to have been passed in obedience to a petition signed by a majority of the qualified voters of the entire district as extended, when it should have been upon the petition of a majority of the qualified voters of the added territory only.

(4) That the property involved had passed to appellant free of the tax lien so foreclosed against it by virtue of a receiver's sale of it to his predecessor in title.

(5) That the amount of the school taxes levied and assessed against the property for the years 1912 and 1913 exceeded the rate permitted by law.

(6) That no sufficient election to authorize the levy and assessment of the maintenance tax, interest, penalty, and costs, for the year 1912, recovered for had been held in the entire municipal school district in that the only election for that purpose ever held, the one of May 4, 1912, merely submitted to the voters the question of whether the ad valorem maintenance tax of, and not exceeding, 50 cents on the $100 valuation, which had theretofore, and prior to the extension of the limits of the district for school purposes in 1907, been voted, should be continued or discontinued, whereas the proposal should have been for or against the levy of such a tax.

(7) That the city was without authority to recover the penalties and interest awarded.

(8) That the ordinance under which the boundaries of the city were extended for school purposes only was not sufficiently pleaded.

These several contentions will be disposed of in the order given.

1. In so far as concerns the maintenance tax, the special act of the Legislature creating the Eagle Lake independent school district, which did not become effective as establishing the successor of the old municipal district until it had been ratified by vote of the inhabitants of the territory affected, expressly provided for its collection by the tax collector of the city; section 7 thereof being as follows:

"Section 7. That any tax levied for the year 1913, and any prior year, by the city council of the city of Eagle Lake for the maintenance of the schools of the independent school district of Eagle Lake, now uncollected, shall be collected and be paid by the tax collector of said city of Eagle Lake to the treasurer of Eagle Lake independent school district."

[1] This, we think, clearly carried with it the authority to the officer named, and through him to the city, to sue for the taxes, if that became necessary in the process of collection; indeed, prior to the passage of this special act the question had arisen under section 148 of the act of 1905, appearing as article 2883 of our present Revised Statutes, whether a city could maintain suit for the collection of school taxes within the added territory after the creation of an independent school district by the extension of the city's boundaries for school purposes only, and the San Antonio Court of Civil Appeals, in City of Eagle Lake v. Lakeside Sugar Refining Co., 144 S. W. 709–711, held it could, saying:

"Inasmuch as section 148 of the act of 1905 (Laws of 1905, p. 302), by the final paragraph thereof, makes it the duty of the city officers to collect the school taxes within the added territory, it authorizes the city to collect such taxes by suit."

The section 148 referred to, now the concluding sentence of Revised Statutes, art, 2883, was as follows:

"The officers whose duty it is to assess and collect school taxes within the city limits shall also assess and collect school taxes within the territory added for school purposes as herein provided."

No other provision relating to the collection of taxes in such district has been called to our attention.

It is quite true that sections 8 and 9 of the special act here involved provided that the trustees of the new district should be vested with all the powers and duties provided by the general laws for boards of trustees of towns and villages incorporated for free schools only, and that, on taking effect of the act, all property belonging to the old municipal school district within its limits should at once become the property of the new district, and, further, that the new district had succeeded the old one in the control

of the schools; but in our opinion this situation, under the other facts here appearing, would make no material difference, and the rule quoted from the Lakeside Sugar Refining Company Case would still be applicable here. It seems clear to us that in the quoted section 7 of the special act the Legislature intended to confer authority on the city of Eagle Lake to prosecute a suit for at least the maintenance tax in question.

[2] As for. the bond and sinking fund tax, if that could be said not to be included in the special authority just referred to, we think none was necessary; that tax had been levied to pay interest upon and create a sinking fund for the retirement of bonds previously issued by the old municipal school district, which were still outstanding as an indebtedness against the old district, and which the new district had never assumed. In these circumstances, if the holders of these bonds had brought suit upon them it must have been against the city of Eagle Lake, the obligor that had ·issued them.

As just indicated, the bonds to which this tax applied were issued by the old municipal district, were still an outstanding indebtedness against it, and intervener, the new district, had neither voted refunding bonds to retire them nor levied any tax for that purpose. As long as this actual condition existed, it would seem to us that, whatever the potential authority of the new district in the matter of itself taking over and providing for the payment of the obligation, the city itself not only had the power, but was under the duty, of looking to its collection. See R. S. arts. 925, 2881, 2883.

[3] If, however, we are mistaken in these views, and the trial court could be said to have erred in so permitting the city of Eagle Lake to maintain the suit, the error is an immaterial and harmless one, for the reason that the intervener was a party to the suit, praying that it be permitted to prosecute it in event the city could not, while the city alleged that the proceeding was brought for the benefit of intervener as to so much of the fund as it was entitled to receive, and the court apportioned the amounts between them.

[4] 2. The attack upon the ordinance by which the city extended its boundaries for school purposes, thereby including therein the property of appellant, and upon the statute authorizing such action (article 2883, R. S.), as being unconstitutional, is not thought to be well grounded. The argument made is that under article 11, § 10, and article 7, § 3, of the Constitution, the control by an incorporated city or town of its schools cannot extend beyond its municipal corporate limits, and that this article of our statutes authorizing such extra. extension is in direct contravention of that limitation.

We do not think these two sections of the Constitution should be so construed, and regard the question here raised as having been directly foreclosed by the decision in City of Eagle Lake v. Lakeside Sugar Refining Co., 144 S. W. at page 712, wherein the court, in disposing of this same objection to the particular extension of boundaries here made, said:

"It was determined in State v. Brownson, 94 Texas, 436, 61 S. W. 114, that the Constitution gives the Legislature a free hand in creating school districts. In that ·case, the Legislature, by direct act, created the Victoria independent school district in part of territory embracing an already incorporated city. This was held to be a constitutional exercise of its power. We fail to comprehend, if the Legislature has power to do this by a special act, why it has not the power, through a general act, to authorize the creation of a school district composed of an incorporated city and contiguous territory. Hence we hold the act of 1905, under which this territory was added to the city of Eagle Lake to constitute a school district, was authorized without the necessity of the town first undergoing· disincorporation for the purpose, as contended."

See, also, State v. Brownson, 94 Tex. 436, 61 S. W. 114, and Dallas County v. Plowman, 99 Tex. 513, 91 S. W. 221.

[5] 3. The claim that the ordinance extending the city limits was void because based upon the petition of a majority of the voters of the extended district as a whole was not substantiated; such fact does not affirmatively appear from the face of the ordinance as contended, but that enactment merely recites that the city council acted on a petition signed by a majority of the inhabitants of all the territory included within the new district; this does not exclude a presumption that a majority of the inhabitants of the added territory also signed it.

Appellant was the proponent of this issue, and the burden was clearly upon him to affirmatively show the insufficiency of the petition, which he failed to do.

[6] .4. The assertion that the property was not in appellant's hands subject to the tax lien claimed rested upon its having been sold on October 23, 1913, to his grantor, Jacob F. Moerschell, by the receiver of the Lakeside Sugar Refining Company, which then owned it, for an amount less than sufficient to satisfy a certain lien indebtedness then held against it by a St. Louis bank. The receivership was pending in the district court of Colorado county, Tex., and that court, in ordering such sale, directed that its proceeds should go to the payment of the bank's secured debt after paying other claims having preference; the one for these taxes being among them.

The appellee city of Eagle Lake was not a party to this receivership proceeding, but at the time of and prior to the sale under it to Moerschell the present suit in its behalf—an entirely separate one—was pending in the

same court for the collection of the taxes.

In these circumstances, just how the city could be held to have lost its preference lien for taxes by a sale made through a receivership to which it was not a party does not readily occur; clearly the pendency of appellee's separate suit to foreclose for its taxes, though in the same court, did not constitute it a party to the receivership proceeding, and consequently it was in no wise bound by the order of sale made therein. Scott v. Bank, 97 Tex. 31, 75 S. W. 79, 104 Am. St. Rep. 835; Cameron & Co. v. Jones, 41 Tex. Civ. App. 4, 90 S. W. 1129.

[7] 5. Appellant's claim of excessive levy of taxes against his property for 1912 and 1913 is likewise, we conclude, unsustained. Since the amendment in 1908 of article 7, § 3, of the Constitution, the lawful rate has been 50 cents on the $100 valuation; as our preliminary statement has shown, in 1913 the city levied a bond and sinking fund tax of 15 cents and 40 cents for maintenance, but the trial court, concluding that the 40-cent. levy for maintenance purposes was unauthorized, because it had been made for the old municipal school district after its abolishment by the special act creating the intervener, allowed a recovery on the bond and sinking fund tax only; there was therefore no excessive levy for 1913. See Nalle v. City of Austin, 91 Tex. 424, 44 S. W. 66, and City of San Antonio v. Berry, 92 Tex. 319, 48 S. W. 496.

As to 1912, the only school taxes levied were a bond and sinking fund tax of 15 cents and a maintenance tax of 30 cents, an aggregate well within the limit. The other 15-cent levies appellant advances as constituting the unlawful excess were shown to be for street, bridge, and other public improvement purposes within the municipal limits and did not apply for school purposes to property lying outside those limits but within the extended limits for school purposes only. Furthermore, no part of the levy thus complained of was made or assessed against appellant's property.

[8] 6. The objection that the election of May 4, 1912, was insufficient as authority for the levy and assessment of a tax for the maintenance of the schools, because held to determine whether the 50-cent upon the $100 valuation maintenance tax theretofore voted should be continued or discontinued, goes to the form of submitting the proposal to the voters; there is neither contention that they did not understand what they were voting on nor that a different result would have followed if the proposition had been for or against the levy of such a tax as appellant suggests it should have been. The statutes governing an election of this character (Revised Statutes, arts. 2875–2877), do not prescribe the form in which the proposal shall be submitted to the voters. The view that the proposition here was within the spirit, if not the letter, of the statute, seems to be sustained by the holding of the Supreme Court upon a very similar question in the case of City of Austin v. Coal Co., 69 Tex. 180, 7 S. W. 200.

7, 8. The remaining claims that the city lacked authority to recover penalties and interest and that the ordinance extending its boundaries for school purposes only was not sufficiently pleaded in this suit are thought to be devoid of merit.

As the basis of its judgment for the interest and penalties the trial court found:

"That said taxes were duly assessed against said property and the owner thereof on the tax rolls of the city of Eagle Lake; that they were not paid, and that said property and the owner thereof was listed as delinquent for said taxes by the city tax collector of the city of Eagle Lake on the delinquent tax rolls of said city, which list was duly published; and that all requirement of law in the levy, assessment, and listing of said property and in the return and preparation and publishing of the delinquent tax rolls were complied with to impress a tax lien on said property for the amount of taxes, penalties, interest, and costs due by virtue of such assessments."

Having thus complied with Revised Statutes, art. 7692, under succeeding article 7693, the judgment for the penalties and interest was proper.

[9] As to the matter of pleading the extension ordinances, its substance was set out, with the averment that the territory as so extended included appellant's property. In the absence of a special exception calling for a more particular description of it, this was sufficient.

Pursuant to these conclusions, all assignments of error presented by appellant have been overruled, and the judgment ordered affirmed.

Affirmed.