**Opinion issued June 25, 2019**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-18-00400-CV

_____

**PHILLIP PAUL BRYANT AND JAMES SCARBOROUGH, Appellants**

**V.**

**ANNISE D. PARKER, MAYOR, AND THE CITY OF HOUSTON, Appellees**

---

**On Appeal from the 333rd District Court**
**Harris County, Texas**
**Trial Court Case No. 2015-69353**

---

## O P I N I O N

In this election contest, contestants/appellants Phillip Paul Bryant and James Scarborough challenge a ballot measure concerning term limits for City of Houston elective offices. Following the November 3, 2015 election in which Houston voters approved a measure to amend the City Charter's term limits provisions,

Bryant filed this election contest, and Scarborough intervened. Bryant, Scarborough, and contestees/appellees, the City of Houston and former mayor Annise D. Parker (collectively "the City"), filed cross-motions for summary judgment. The trial court denied the motions of Bryant and Scarborough and granted the City's motion, dismissing all claims.

In four issues, both Bryant and Scarborough argue that the trial court erred in granting the City's motion for summary judgment and in denying their own motions for summary judgment because the ballot language "affirmatively misrepresented" and "omitted" the "true character, purpose, and chief feature of the Charter Amendment."

We affirm.

## Background

In the months leading up to the November 3, 2015 election, the City sought to amend Article V of the Houston City Charter, governing the number of terms and length of each term for City elective office. The proposed Charter amendment stated, in relevant part:

> (a) For the purposes of term limits, City elective offices are Mayor, City Controller, and City Council Member (either At-Large or District). The term of office for a City elective office shall be four years. Except as otherwise provided herein, no person shall be eligible to be elected to more than two four-year terms in the same City elective office.

2

(b) For positions to be elected at the City General Election to be held in November 2015, the eligibility of persons then holding City elective office to seek reelection to a City elective office shall be as follows:

1. A person serving his or her first two-year term shall be eligible to seek two additional terms of four years' duration in that same office. A person having then served two additional terms of four years' duration shall not be eligible to seek re-election to the same office.

2. A person serving his or her second two-year term shall be eligible to seek one additional term of four years duration in that same office. A person having then served one additional term of four years duration shall not be eligible to seek re-election to the same office.

3. A person serving his or her third two-year term shall not be eligible to seek election to that same office.

Thus, the Charter amendment sought to establish four-year terms of office for City elective offices and to set a two-term limit for holding elective office. The proposed Charter amendment also included specific provisions for transitioning from the then-existing Charter terms, which had provided for two-year terms of office and a limit of three terms in office, to the provisions in the proposed Charter amendment.

None of the parties dispute that the City met the publication requirements for notifying voters of the substance of the proposed Charter amendment.[1] In the

---

[1] "Election notices for city charter amendments must be published in the newspaper before the election, and the notice must 'include a substantial copy of the proposed amendment.'" *Dacus v. Parker*, 466 S.W.3d 820, 825 (Tex. 2015) (quoting TEX.

November 2015 election, this measure was submitted to voters as Proposition 2. The ballot language for Proposition 2 read:

> (Relating to Term Limits for City Elective Offices) Shall the City Charter of the City of Houston be amended to reduce the number of terms of elective offices to no more than two terms in the same office and limit the length for all terms of elective office to four years, beginning in January 2016; and provide for transition?[2]

The measure was approved by voters and implemented. The Charter amendment took effect November 13, 2015, and it affected the terms of elected officials beginning in January 2016.

On November 19, 2015, Bryant filed his election contest, asserting that the ballot language was misleading in multiple ways. Scarborough subsequently intervened, also asserting that the ballot language was insufficient to submit the issue of the proposed Charter amendment to voters.

All parties filed motions for summary judgment. The City moved for traditional summary judgment on the ground that the Proposition 2 ballot language

---

LOC. GOV'T CODE ANN. § 9.004(c)(1)). The record reflects that the City complied with this provision in this case.

[2] "[T]he amendment need not be printed in full on the ballot—not all details must be there." *Dacus*, 466 S.W.3d at 825 (observing that election notices require publication of proposed amendment and that "voters are presumed to be familiar with every measure on the ballot"). *Dacus* further instructs that ballot language nevertheless "must capture the measure's essence," stating that "though neither the entire measure nor its every detail need be on the ballot, the importance and formality of an election still demand a threshold level of detail." *Id.*

4

was not misleading as a matter of law.[3] The City's motion set out the undisputed facts of the case—the language of Proposition 2, the former Charter provisions, and the terms of the Charter amendment—and argued that, in light of Texas Supreme Court precedent and other relevant law, the ballot language of Proposition 2 "meets the requirements for validity in Texas."

Scarborough then filed his own combined traditional motion for summary judgment and response to the City's summary-judgment motion. He set out the same undisputed facts as the City. Scarborough further referenced his own affidavit, in which he averred that he read the ballot language carefully before voting, that he was aware of the current term limits and terms of office for City officials, and that he "believed that a vote in favor of Proposition 2 would reduce the total number of terms from three terms to two terms" and would limit "the total amount of time that a city official could hold the same office [to] a maximum of four years, meaning that each term would have a lifespan of only two years." He argued that, as a matter of law, the ballot language failed to substantially submit the proposed Charter amendment with definiteness and certainty and was misleading. Aside from his affidavit, Scarborough's motion for summary judgment contained substantially the same evidence as the City's motion (i.e., it referenced

_____

[3] The City also filed a no-evidence motion for summary judgment that the trial court subsequently determined was moot in light of its ruling on the City's traditional summary judgment motion. None of the parties raise any issues on appeal regarding the no-evidence motion.

the terms of the proposed Charter amendment and the ballot language of Proposition 2).

Like Scarborough, Bryant filed a motion for summary judgment on his claims and a response to the City's motion for summary judgment. Bryant again referred to the same undisputed facts—the terms of the Charter amendment and the language of Proposition 2 as it appeared on the ballot. Like Scarborough, Bryant argued that the ballot language was misleading as a matter of law. His motion for summary judgment was not accompanied by any evidence.

Following a hearing, the trial court denied both Bryant's and Scarborough's motions for summary judgment, and it granted the City's motion, ordering that Bryant and Scarborough take nothing on their election-contest claims. This appeal followed.

## Sufficiency of Ballot Language

Both Bryant and Scarborough argue that the trial court erred in denying their own motions for summary judgment and granting the City's motion for summary judgment because the Proposition 2 ballot language was "misleading and deceptive as a matter law" in that the ballot language "affirmatively misrepresented" and "omitted" the "true character, purpose, and chief feature of the Charter Amendment."

6

## A. Standard of Review

A movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review a summary judgment de novo. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). If the movant initially establishes a right to summary judgment on the issues expressly presented in the motion, then the burden shifts to the nonmovant to present to the trial court any issues or evidence that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979).

When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, we must consider the summary judgment evidence presented by both sides, determine all questions presented, and if we determine that the trial court erred, render the judgment the trial court should have rendered. *See S. Crushed Concrete, LLC v. City of Houston*, 398 S.W.3d 676, 678 (Tex. 2013); *Fielding*, 289 S.W.3d at 848. We may affirm if any of the theories presented to the trial court and preserved for review are meritorious. *Fielding*, 289 S.W.3d at 848.

**B.     Law Governing Challenges to Sufficiency of Ballot Description**

"The Texas Election Code grants discretion to 'the authority ordering the election [to] prescribe the wording of a proposition' unless otherwise provided by law." *Dacus v. Parker*, 466 S.W.3d 820, 823 (Tex. 2015) (quoting TEX. ELEC. CODE ANN. § 52.072(a)). Municipalities have "broad discretion" in wording propositions; however, this discretion is not unlimited. *Id.* at 826. The proposed Charter amendment or measure need not be printed in full on the ballot, but the proposition or ballot language must "substantially submit[] the question" with "definiteness and certainty." *Id.* at 825 (quoting *Reynolds Land & Cattle Co. v. McCabe*, 12 S.W. 165, 165 (Tex. 1888)). "In other words, the ballot must identify the measure *by* its chief features, showing its character and purpose." *Id.* (emphasis in original) (citing *Wright v. Bd. of Trs. of Tatum Indep. Sch. Dist.*, 520 S.W.2d 787, 792 (Tex. App.—Tyler 1975, writ dism'd), and *Turner v. Lewie*, 201 S.W.2d 86, 91 (Tex. App.—Fort Worth 1947, writ dism'd)).

Thus, the ballot description must "substantially submit[ the measure] with such definiteness and certainty that the voters are not misled." *Id.* at 826 (quoting *Reynolds Land & Cattle Co.*, 12 S.W. at 165). The Texas Supreme Court identified two ways that a proposition's ballot language may fail this test: (1) "it may affirmatively misrepresent the measure's character and purpose or its chief

8

features," or (2) "it may mislead the voters by omitting certain chief features that reflect its character and purpose." *Id.*

In considering the sufficiency of the ballot language, we examine the proposed measure and the language of the proposition as presented on the ballot. *See id.* at 828–29 (stating that decision was based "solely on the failure of the proposition to present the measure's chief features and its character and purpose"). "[W]e do not consider the Contestant's evidence that some voters were subjectively confused about the nature of the measure." *See id.* at 828 ("Those who oppose election results will always be able to find voters who claim to have been misled."). When, as here, there is no dispute regarding the language used in the measure or the language used in the ballot, the determination of whether the ballot language substantially submitted the measure with definiteness and certainty is a question of law. *See City of Houston v. Dacus*, No. 14-16-00123-CV, 2017 WL 536647, at *4 (Tex. App.—Houston [14th Dist.] Feb. 9, 2017, pet. denied) (mem. op.); *see also Dacus*, 466 S.W.3d at 824, 828–29 (considering sufficiency of ballot language on motion for summary judgment, refusing to consider evidence that some voters were subjectively confused, and basing ruling solely on its determination that proposition failed to present measure's chief features and its character and purpose); *cf. Sheller v. Corral Tran Singh, LLP*, 551 S.W.3d 357, 362 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) ("If the issue raised is

based on undisputed and unambiguous facts, then we may determine the question presented as a matter of law.").

## C. Analysis

Here, the City proposed a Charter amendment to provide that "[t]he term of office for a City elective office shall be four years" and further providing that, "Except as otherwise provided herein, no person shall be eligible to be elected to more than two four-year terms in the same City elective office." The proposed Charter amendment made exceptions to the new two-term limit for people holding City elective office during the transitional period while the new term lengths and limits were implemented, stating, in relevant part, that "[a] person serving his or her first two-year term shall be eligible to seek two additional terms of four years' duration in that same office."

> This measure was presented on the ballot as Proposition 2, which stated:
>
> (Relating to Term Limits for City Elective Offices) Shall the City Charter of the City of Houston be amended to reduce the number of terms of elective offices to no more than two terms in the same office and limit the length for all terms of elective office to four years, beginning in January 2016; and provide for transition?

Thus, the language of Proposition 2 as set out on the ballot communicated the two chief features of the proposed Charter amendment—"the number of terms of elective offices [was reduced] to no more than two terms in the same office" and "the length for all terms of elective office [was limited] to four years." The ballot

10

language of Proposition 2 also informed voters that the amendment of the Charter would "provide for transition."

Considering both the language of the Charter amendment and the ballot language of Proposition 2, we conclude that the ballot language substantially submitted the measure with such definiteness and certainty that voters were not misled. *See Dacus*, 466 S.W.3d at 826. Proposition 2 stated to voters that the Charter would be amended to allow elective officials to serve no more than two four-year terms in the same office. That is substantially what the proposed Charter amendment provided. It was not necessary that the ballot language include every detail contained in the proposed measure. *See id.* Rather, this short description identified the measure for what it was—a change to the length and number of terms for City elective officials—and it accurately represented the proposed measure. *See id.*

Accordingly, we conclude that the City established that it was entitled to judgment as a matter of law. *See id.* at 829; *Fielding*, 289 S.W.3d at 848.

Bryant and Scarborough nevertheless argue that the trial court erred in granting the City's motion and denying their own motions because the language of Proposition 2 was misleading and deceptive. In their first two issues, Bryant and Scarborough assert that Proposition 2 "affirmatively misrepresented the true character, purpose, and chief feature of the Charter Amendment (e.g., to increase,

11

rather than decrease, the total potential time an officeholder may serve in the same office from 6 years to 8 years)." They argue that the phrase "and limit the length for all terms of elective office to four years" from the ballot language of Proposition 2 "caused [them] to believe that passage of Proposition 2 would then limit the total length of time a specific officeholder can hold the same office to a maximum of four years." Bryant and Scarborough assert that "[t]he clear meaning of the ballot language is that a person was limited to four years for all terms," which was inconsistent with the language of Charter amendment, which allowed for an official to serve for up to eight years. They argue, "Had the City simply inserted the word 'each' instead of 'all,' i.e., '. . . limit the length for *each* term of elective office to four years,' the ballot language would have been accurate and consistent with the language of the charter amendment."

This interpretation by Bryant and Scarborough is contrary to the plain language of Proposition 2. When read in its entirety, the ballot language provided that elective City officials could serve "no more than two terms in the same office" and that the length of those terms would be four years. By referencing "all terms of elective office," the complained-of ballot language identified a chief feature of the proposed Charter amendment—i.e., that it would apply to *all* City elective offices. Furthermore, this complaint—that the City should have used "each" instead of "all"—addresses discretionary choices about wording but does not

12

materially impact the substance of the measure being conveyed. *See Dacus*, 466 S.W.3d at 826 (holding that "municipalities generally have broad discretion in wording propositions" so long as ballot description "substantially submit[s] the question . . . with such definiteness and certainty that the voters are not misled"); *Beeman v. Mays*, 163 S.W. 358, 359 (Tex. App.—Dallas 1914, writ ref'd) (holding election valid where ballot allowed voting "For School Tax" and "Against School Tax," where language should have said, "For increase of school tax" and "Against increase of school tax"). Scarborough also points to his own affidavit testimony that he was confused by the measure.[4] However, such subjective evidence of confusion is not relevant to our consideration of this issue. *See Dacus*, 466 S.W.3d at 828–29 ("[W]e do not consider the Contestant's evidence that some voters were subjectively confused about the nature of the measure. Those who oppose election results will always be able to find voters who claim to have been misled.").

We overrule Bryant's and Scarborough's first two issues.

In their third and fourth issues, Bryant and Scarborough argue that the language of Proposition 2 was "misleading and deceptive as a matter of law because it affirmatively omitted the true character, purpose, and chief feature of the

---

[4]  In both his motion for summary judgment and his brief on appeal, Bryant references various comments allegedly made by former Mayor Parker or other officials and concerns raised in other elections. However, he presented no evidence supporting these statements with his motion for summary judgment and thus we do not consider them on appeal. *See* TEX. R. CIV. P. 166a(c).

13

Charter Amendment (e.g., to increase, rather than decrease, the total potential time an incumbent officeholder may serve in the same office from 6 years to 10 years)."[5]  Bryant and Scarborough assert that the City made an "egregious omission as it relates to the 'transition' rules contained" in the Charter amendment. They argue that because Proposition 2 failed to provide voters with notice that, for some incumbent officials, "the total potential time served would change from the status quo of 6 years to a grand total of 10 years," it misled voters "by omitting certain chief features that reflect [the measure's] character and purpose."

The City, however, argues that the provisions of the Charter amendment that addressed the transition from the former term limits to the newly-proposed term limits were not a chief feature of the Charter amendment, and we agree. By its

---

[5]  To the extent that Bryant and Scarborough's claims can be construed to challenge the validity of the Charter amendment itself or the City's implementation of the Charter amendment, we observe that such claims fall outside the limited scope of this election contest. *See Dacus*, 466 S.W.3d at 826 ("In an election contest challenging the sufficiency of the ballot description, the issue is whether the ballot 'substantially submits the question . . .with such definiteness and certainty that the voters are not misled.'") (quoting *Reynolds Land & Cattle Co. v. McCabe*, 12 S.W. 165, 165 (Tex. 1888)); *Hotze v. White*, No. 01-08-00016-CV, 2010 WL 1493115, at *5 (Tex. App.—Houston [1st Dist.] Apr. 15, 2010, pet. denied) (mem. op.) (contrasting challenge to election process and challenge to implementation and interpretation of election results; observing that challenges to City's interpretation and implementation of election results do not constitute challenges to validity of election or election process); *Rossano v. Townsend*, 9 S.W.3d 357, 361–62 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (recognizing that election contest is not ordinary lawsuit but is special proceeding in which district court's authority to act is limited to subjects or grounds expressly or impliedly authorized by Election Code, including any suit in which validity of election itself or some aspect of elective process is challenged).

plain language, the Charter amendment provided that elective officials could serve up to two four-year terms in office. A measure's chief features are those that convey the measure's character and purpose. *See id.* at 829 (ballot language should "adequately describe the chief features—the character and purpose—of the charter amendment"). The transition provision for first-term incumbents referenced by Bryant and Scarborough was an exception that would only apply in limited circumstances—i.e, to a person who, at the time the Charter amendment was approved, had served only one two-year term—and for a limited time—"for positions to be elected at the City General Election to be held in November 2015." Tellingly, neither Bryant nor Scarborough complain that the remainder of the transition provisions in the Charter amendment, regarding incumbents who had served two or more terms, should have been included on the ballot.

Nevertheless, the ballot language did mention, albeit in a generalized manner, that the measure provided for "transition." *See Wright*, 520 S.W.2d at 789, 792 (holding that use of two words, "maintenance tax," on ballot sufficiently described school-tax measure); *Moerschell v. City of Eagle Lake*, 236 S.W. 996, 1000 (Tex. App.—Galveston 1921, writ ref'd) (upholding proposition about "contin[uing] or discontin[uing]" tax even though election arguably concerned new tax). We conclude that the provisions governing the "transition" to the new term limits set by the Charter amendment were not the sort of "chief feature" the

15

supreme court has identified in the past, and, thus, a brief reference to the "transition" provisions was sufficient. *See Dacus*, 466 S.W.3d at 826 (holding ballot language inadequate when it did not specify that drainage charges would be imposed on properties benefiting from drainage system: "when the citizens must fund the measure out of their own pockets, this is a chief feature that should be on the ballot, and its omission was misleading"); *Reynolds Land & Cattle Co.*, 12 S.W. at 165–66 (proposition asking whether taxes "shall be levied for school purposes" was sufficient even though it did not specify purposes behind levy).

We overrule Bryant and Scarborough's third and fourth issues.

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Landau.

16