### City of Dallas et al. v. Dallas Consolidated Electric Street Railway.

#### No. 1080. Decided March 6, 1902.

**1.—Taxation—Franchise—Case Limited.**

Decision in State v. Austin & Northwestern Railway Co., 94 Texas, 530, limited and distinguished. (P. 274.)

**2.—City Charter—Franchise Tax.**

Under section 118 of its special charter, the city of Dallas has power to tax the franchises of a street railway company, whether as part of its tangible property, or separately, and section 134 of the charter does not require such assessment to conform to the law for assessing State taxes. (Pp. 275.)

**3.—Same—Statutory Construction—Permission or Command.**

Though words of permission, and not of command, may, when used with reference to the duties of a public officer, imply a duty and make the law mandatory, such construction will be governed by the intent of the Legislature as deducible from the nature and subject matter of the statute, its context, and other laws referred to therein. (Pp. 275, 276.)

**4.—Same.**

An authority conferred on a city council to assess corporate property and shares as same are or may be assessed by State law, will not restrict their power to the manner prescribed for the State, where a subsequent section of the charter gives the council control over the manner of assessment. (Pp. 276, 277.)

**5.—Same.**

The authority given by section 134 of the charter of the city of Dallas to assess corporate property and shares as same are or may be assessed by State law, applies only to corporations subject to special requirements by the State as to the mode of assessing their assets. (Pp. 276, 277.)

**6—Corporation—Ordinance—Annual Payment—Franchise Tax.**

The requirement of the payment of a fixed annual charge or bonus to the city, by ordinance granting to a street railway company the right to use public streets, will not preclude the city from imposing an ad valorem tax on such franchise as property of the corporation; but the condition is to be considered in determining the value of the franchise. (Pp. 277, 278.)

**7.—Same.**

Where the right to use streets was granted a corporation on condition of payment of an annual sum described in the ordinance as a franchise tax, this will not prevent the imposition of an ad velorem tax on the value (burdened by such condition) of the franchise; it was beyond the power of the city to contract for commutation of taxes legally assessable. (P. 278.)

**8.—Practice in Supreme Court.**
   Errors not assigned in the Court of Civil Appeals will not be considered by the Supreme Court.   (P. 278.)

Error to the Court of Civil Appeals for the Fourth District, upon error from Dallas County.

The street railway sued, seeking to enjoin the collection of a franchise tax by the city, which reconvened to recover the tax, and had judgment therefor, with dissolution of the temporary injunction.   The company prosecuted writ of error and obtained reversal with rendition of judgment in its favor.   The city then secured writ of error from Supreme Court.

*W. T. Henry* and *J. J. Collins,* for plaintiff in error.—The court erred in holding that the franchise sought to be taxed in this cause was a part of the real estate of the defendant in error and not subject to a separate tax.   The court erred in not holding that the franchise sought to be taxed in this cause was a special privilege emanating from the government and not a matter of common right to citizens of the county generally, and consequently taxable separately from the real estate of the defendant in error.   Sayles' Civ. Stats., arts. 5076, subdiv. 38, 5118, subdiv. 43, 5064, subdiv. "Person"; Charter of Dallas (Special Laws of 1897) secs. 118, 125, 131, 133, 134; State v. Railway, 94 Texas, 530; Bank v. Fenno, 8 Wall., 547; State Railroad Tax Cases, 92 U. S., 603; Bridge Co. v. Kentucky, 166 U. S., 153; City Water Co. v. State, 88 Texas, 600; Threadgill v. Pumphrey, 87 Texas, 573; Cooley on Tax., 383.

The Court of Criminal Appeals erred in holding that the payment to the city of Dallas of a fixed bonus, not regulated by the value of the franchise, for such franchise, in any manner affected the right and obligation of the city of Dallas to levy and colect an ad valorem tax upon the franchise of the plaintiff in error to operate and maintain lines of street railway over the public streets of the city.   City of Austin v. Austin Gas Co., 69 Texas, 180; Altgeld v. City of San Antonio, 81 Texas, 436; Erie Railway v. Pennsylvania, 21 Wall., 492; Street Railway v. Bellevue, 49 S. W. Rep., 23; City of New Orleans v. Railway, 21 Am. St. Rep., 365.

The law requires the assessment for taxation of franchises, and the right to maintain and operate lines of street railway over the public streets of a city, vested in a corporation by special grant of the city council, is such a franchise as the law contemplates.   A franchise is incorporeal personal property, and subject to taxation.   Bank v. Fenno, 8 Wall., 547; State Railroad Tax Cases, 92 U. S., 603; Bridge Co. v. Kentucky, 166 U. S., 153; Express Co. v. Auditor, 166 U. S., 185; County of Galveston v. Galveston Wharf Co., 72 Texas, 557; Spring Valley W. W. Co. v. Schlottler, 62 Cal., 112; Cooley on Tax., 383; 25

Am. and Eng. Enc. of Law, 33; Const. of Texas, art. 8, secs. 1, 2, 4, 5, 17; Sayles' Civil Stats., arts 5061, 5064, subdiv. "person;" 5076, subdiv. 38; 5118, subdiv. 43; Charter of City of Dallas (Spec. Laws of 1897), secs. 118, 125, 131, 133, 134. Distinction between franchises of corporate existence and special privileges or easements constituting franchises: State v. Railway, 62 S. W. Rep., 1050; Street Railway v. Common Council, 85 N. W. Rep., 96; City Water Co. v. State, 88 Texas, 600; Threadgill v. Pumphrey, 87 Texas, 573; 2 Mora. on Priv. Corp., sec. 923; Bank v. Earl, 13 Pet., 575.

The method of taxation is a matter vested solely in the legislative discretion, and the law provides a safe method for ascertaining the value of franchises for ad valorem taxation by allowing the owner to render his property at its correct value, and upon his failure to render, provides an efficient system for the determination of its value. Porter v. Railway, 76 Ill., 561; Delaware Railroad Tax Case, 18 Wall., 206; Cooley on Tax., 412, 422; State v. Anderson, 63 N. W. Rep., 746; Street Railway v. Common Council, 85 N. W. Rep., 96; Telegraph Co. v. State, 62 Texas, 635.

A franchise granted by a city council to maintain and operate a line of street railway over the public streets of the city has nothing to do with real estate, and could not be termed a right or privilege belonging or in any way appertaining thereto. County of Galveston v. Galveston Wharf Co., 72 Texas, 557; Street Railway v. City of Bellevue, 49 S. W. Rep., 23; Cooley on Tax., 383.

*Wood & Hudson*, for defendant in error.—There is no law of Texas making the "franchise to operate and maintain lines of street railway over certain streets," or "the intangible properties, good will, earning capacity, privileges and rights," the subject of taxation, or providing any method for their assessment and valuation, for taxation. Certainly none authorizing their assessment and valuation separate and apart from the company's tangible properties. Const. of Texas, art. 8; Rev. Stats., arts. 5061, 5062, 5232a, 5063, 5064, 5076, 5084, 5088, 5243i.

The property on which the tax is sought to be recovered does not fall within the designation of real, personal, or mixed property, as designated and described by the law of the State of Texas. See authorities, supra, especially arts. 5061, 5062 and 5063.

The power to tax being purely legislative, there must be distinct authority of law for every levy of taxes; therefore, while the power to tax franchises may exist, still a tax upon same must be expressly and unambiguously authorized and imposed by the Legislature, and is not to be presumed from a mere declaration in the law, organic or statutory, that all property shall be taxed. George v. Dean, 47 Texas, 83; Telegraph Co. v. State, 62 Texas, 635; State v. Railway, 62 S. W. Rep., 1050; Bank v. Bogel, 51 Texas, 355; Cooley on Tax., 2 ed., 171, 200, 279, 324; 2 Elliott on Railways, sec. 736; Board of Comrs. v. Holliday, 42 Law.

Rep. Ann., 826; Thomas v. Gay., 169 U. S., 383; Bank v. Stamford, 103 Fed. Rep., 98; Garnett v. Merriweather, 102 U. S., 472.

That all property not specifically exempted is taxable, that is, subject or liable under appropriate legislation to be taxed, is correct; but the converse of the proposition, that all property not specially exempted is, by the law of Texas, taxed, is not correct. A failure to include or embrace a particular item or character of property as taxable does not exempt it in the legal sense of that term, but merely relieves it from the burden of taxation until the Legislature, by law, shall expressly bring it within the law; the failure to enumerate or specify what ought to be taxed, but is not taxed, is a casus omissus, which can not be supplied by the courts, or otherwise than by the Legislature. Galveston Wharf Co. v. Galveston, 63 Texas, 23; Daugherty v. Thompson, 71 Texas, 192; 2 Elliott on Railways, sec. 736.

The franchises to maintain and operate street railways over certain streets in the city are rights and privileges belonging to and appertaining to the real estate of the party or company enjoying such franchises. Rev. Stats., art. 5062; State v. Railway, 62 S. W. Rep., 1050.

The franchises sought to be taxed, and the intangible properties of this plaintiff for the use thereof, inhere in and are inseparably connected with, and can not exist in the absence of its tangible properties, and were and are embraced in the rendition and assessment of the taxes levied and assessed against this plaintiff in the years 1898 and 1899 in the list or inventory of its property rendered by it, and the additional rendition by the assessor would amount to double taxes on the same subject. State v. Railway, 62 S. W. Rep., 1050; Water Co. v. Fond du Lac, 16 Law. Rep. Ann., 581; Northampton Co. v. Coal & N. Co., 75 Pa. St., 461.

The tax here sought to be enforced, though masquerading under the guise of an ad valorem tax upon intangible personal property, is in fact an excise tax arbitrarily levied without authority of law by a local and purely administrative officer, and constituted double taxation. Cooley on Tax., 2 ed., 379; Bank v. Apthorp, 12 Mass., 252; Commonwealth v. Bank, 5 Allen, 428; Provident Inst. v. Massachusetts, 6 Wall., 611; Oliver v. Washington Mills, 11 Allen, 268; Commonwealth v. Gas Co., 12 Allen, 75; Commonwealth v. Manufacturing Co., 12 Allen 298; Manufacturing Co. v. Massachusetts, 6 Wall., 632; Commonwealth v. Improvement Co., 98 Mass.; 19.

*Finley, Etheridge & Knight* (from argument for defendant in error).—The pertinent portion of section 133 is as follows: "The city council * * * may and shall make all such rules and regulations, and ordain and pass all ordinances deemed necessary to the levying, laying, imposing, assessing, and collecting of any taxes provided for in this charter."

It is respectfully submitted that these general provisions contained in section 133 can not prevail over the specific provisions of section 134, for two reasons:

1.  Section 134 specially relates to the mode of assessing property of corporations, while the provisions of section 133 are general, and it is a cardinal rule of construction that the more general must yield to the more specific.   Erwin v. Blanks, 60 Texas, 583; Railway v. Rambolt, 67 Texas, 654.

2.  In the event of repugnancy between the provisions of section 133 and section 134, the latter must control, in that the rule of interpretation, long recognized, is that in cases of repugnancy between two provisions of a statute which can not be reconciled, the later in position should control as being the last expression of the legislative will.   Railway v. Rambolt, 67 Texas, 657, and cases cited.

There are no other sections of the charter of the city of Dallas capable of exercising any influence upon the question, and it is respectfully submitted, therefore, that because of section 134, the city council of the city of Dallas is, under its charter, powerless to assess the property of corporations in any mode other than that prescribed by the State law upon the subject.   By the State law it is provided (article 5062), "Real property, for purposes of taxation, shall be construed to include the land itself, whether laid out in town lots or otherwise, and all buildings, structures and improvements or other fixtures of whatsoever kind thereon, and all of the rights and privileges belonging or in anywise appertaining thereto."

Construing this statute, in State v. Railway, 62 Southwestern Reporter, 1050, this court said: "It seems to us the plain purpose of the article last quoted is to require that in assessing real estate for taxation, whether held by a natural person or a corporation, there shall not only be included in the valuation the value of the land itself, merely as land, together with the improvements thereon, but also all franchises and privileges appurtenant thereto, and all the advantages for a profitable prosecution of the business to which it is appropriated."

From the unchallenged findings of fact of the trial court it affirmatively appears that some of the ordinances of the city of Dallas, under and by virtue of which defendant in error acquired its franchise, prescribed the annual payment of a fixed sum, denominating the same "a franchise tax."   We concede the rule to be, as stated by the Supreme Court of the United States, in Erie Railway v. Pennsylvania, 21 Wallace, 498, that the surrender of the right to tax can not be inferred from ambiguous language, but from this it does not follow that exemption from further taxation may not arise by necessary implication from the language employed.   Railway v. Sabin, 26 Pa. St., 244, cited with approval by the Supreme Court of the United States in Railway v. Pennsylvania, 21 Wall., 499 and 500.

When the privilege of operating street cars upon certain streets in the city of Dallas was granted by an ordinance, which in terms prescribed the payment annually of a given sum as a franchise tax, the legitimate inference is that those who accepted the privilege, under the terms prescribed by the ordinance, rightfully assumed that no other or additional

franchise tax would be imposed. Such, of course, can not be maintained with reference to privileges extended by ordinances imposing the payment annually of fixed sums purely as a bonus.

The position of the counsel for the plaintiffs in error is that the Legislature was powerless, in view of certain provisions of the Constitution, to invest the city council with authority either to exempt from or commute ad valorem taxes. Doubtless this is a correct proposition, but we deny its application to this case, for the reason that, in the very nature of things, the value of a franchise is incapable of approximate, much less exact, ascertainment, nor have any rules for the ascertainment of such values been prescribed by the Legislature. It was therefore competent for the city council, acting in good faith, at the time of the granting of the franchise, to fix, determine, and agree, with those to whom the franchise was granted, upon the value thereof, and the amount of revenue that the city should annually derive therefrom. · No abuse of such discretion is ·even suggested, much less shown. · The city council, therefore, by definitely ascertaining in advance the value of the franchise granted and the amount of the revenue that the city should annually derive therefrom, was neither exempting the franchise from taxation nor commuting the taxes thereupon. But if this position is not sound, yet the fact remains that the city should not be permitted to recover a double franchise tax, one imposed, in the first instance, by ordinance, and the other, in the second instance, by assessment, and if the action of the city council in prescribing in· advance the amount of the annual franchise tax to be paid, exceeded its authority, it would follow that a subsequent and independent assessment of such franchise tax would in law operate to discharge the liability of the defendant in error from making the annual payment of the franchise tax as prescribed by the ordinance.

The cardinal rule is that taxes must be equal and uniform, and this rule is violated whenever the taxpayer is subjected to double taxation, and if both the assessment as made by the assessor and that as made by the city council by ordinance are to stand, it inevitably follows that defendant in error has been, and throughout the life of its corporate existence will continue to be, doubly taxed, a result which we submit this court will not permit.

GAINES, CHIEF JUSTICE.—This case was brought to the Court of Civil Appeals of the Fifth Supreme Judicial District by a writ of error, and was transferred to the Court of Civil Appeals for the Fourth District. The opinion of the latter court gives a clear and succinct statement of the case, which we adopt, and which is as follows:

"Plaintiff in error, the Dallas Consolidated Electric Street Railway Company, instituted this suit to enjoin the city of Dallas and Ford House, its tax collector, from collecting a certain tax imposed by said city on its franchise as a street railway. The cause was tried by the court and resulted in a judgment dissolving the temporary injunction

theretofore granted and in favor of the city on its plea in reconvention for the sum of $2865.50.

"There being no statement of facts in the record, the findings of fact made by the trial judge must necessarily be adopted by this court as the facts proven on the trial. ,

"Plaintiff in error is a private corporation chartered by the laws of Texas and permitted by the ordinances of the city of Dallas to operate its line of railway on certain streets. In the ordinances granting that right, the street railway company was required to pay annually to the city certain fixed sums, designated in some of the ordinances as a franchise tax and in others as a bonus, and in others it is not given any specific name. The aggregate of the sums fixed in the ordinances amount to $2600 or $2700 annually. These sums were fixed regardless of the value of the property. It was also provided in the ordinances that all policemen and firemen of the city, while on duty, should be carried free of charge, and plaintiff in error has also been compelled by the city to pave and repair the pavement on the streets on which its cars are operated, the expense for such work to plaintiff in error during the years 1898 and 1899 amounting to $8000. An ad valorem tax was levied on the property, of every description, of plaintiffs in error for the years 1898 and 1899, and it rendered for taxation all of its property, except the franchise, and the franchise was added to the list of property by the city assessor. The property rendered by plaintiff in error consisted of its real estate and all its tangible personal property. The contest in this case is over the sum of $2865 imposed by the city on what is denominated the 'franchise to operate and maintain lines of street railway' over certain streets."

The trial court held that plaintiff (the Dallas Consolidated Electric Street Railway Company) was liable for the tax, and dissolved the injunction. The Court of Civil Appeals reversed this judgment and rendered judgment for the plaintiff, making the injunction perpetual.

The leading question in the case is: Did the charter of the city of Dallas authorize the assessment of the franchise of a street railway company as a separate item in the rendition of its property for taxation? Construing our general laws in reference to the method of rendering the property of railroad companies for taxation for State purposes, we held in the case of The State v. Austin & Northwestern Railroad Company, 94 Texas, 530, that the franchise of a railroad was not assessable as a separate distinct entity from its physical property. But we neither held that such franchise was nonassessable, nor that, under the statutes then in question, its value was not to be estimated in determining the valuation of the property of the company for the purposes of taxation. Here we have a different question. The city of Dallas is incorporated by special law, and the question is, whether the charter of the city authorizes the tax upon the company's franchise and its assessment as a separate item of property. The provisions of the charter which, we think, bear upon the question are as follows:

"Sec. 118. The city council shall have power to levy and collect the ordinary municipal taxes upon the roadbed, rights, franchises, and all other property of street railroads of every kind, whether their motive power be steam, horse, mule, electricity, or otherwise." * * *

"Sec. 134. The city council shall have power to assess the property and shares of corporations, companies, banks, and such other institutions as the same are now or may be assessed by the State law in such cases made and provided, and shall have full power to enforce the collection of such taxes in such manner as by said council may be deemed necessary.

"Sec. 135. The city council shall have power by ordinance to regulate the manner and mode of making out tax lists, inventories, and appraisements of property therein, and to prescribe the oath that shall be administered to each person on rendition of his property, and prescribe how, when, and where property shall be rendered, and prescribe the number and form of assessment rolls, and fix the duties and define the powers of city assessor, and adopt such measures as the council may deem advisable to secure the assessment of all property within the city limits, and collect the tax thereupon, and may provide a fine and imprisonment, or either, for all persons neglecting, failing, or refusing to render their property for taxation."

It is clear that the part of section 118 just quoted authorizes a tax upon the franchise of a street railway company. If section 135 be detached from its context, it is equally clear, as we think, that its only proper construction should be that the city council were empowered to require the assessment of such franchise to be made either as a part of the tangible property of the corporation and to be estimated in assessing the value of the whole or to be separately assessed and valued as a distinct article of property. The language, "to regulate the manner and mode of making out tax lists, inventories, and appraisements of property therein, * * * and prescribe how, when, and where property shall be rendered," of itself hardly admits of any other construction. But it is contended on behalf of the defendant in error that section 134 shows that such was not the meaning,—that it makes manifest that the purpose was to require the assessment to be made in conformity to the law for assessing State taxes. If this contention could be sustained, and if a street railway be real property and its franchise of a use of the streets a part of the realty, the present case should be determined by the ruling in the case of the State v. Austin & Northwestern Railroad, *supra.* But we are of the opinion that such was not the purpose of the Legislature. The terms of the section literally construed are not mandatory. The language is, "the city council shall have the power to assess," etc., not that they shall assess. It has been held, however, that the word "may," which is ordinarily a word of permission and not of command, when used with reference to the functions of a public officer, may imply a duty and may make the law mandatory; and the thought suggests itself that the same rule should apply in a case like the present,

where, instead of using the words "shall" or "may," the language is "shall have the power to" do a certain act. But if the rule be applicable in such a case, the construction must ultimately depend upon what was the intent of the Legislature as deducible from the nature and subject matter of the statute, its context and other laws referred to therein. That the section is not mandatory is shown by the next section (135), which, as we have seen, confers the power upon the council to prescribe the manner of rendering and assessing property for the purpose of taxation by the city. This is made the more apparent when we consider the statutes of the State then in force for assessing the property of certain corporations, together with the history of the legislation upon that subject. Under the Revised Statutes of 1879, the property of a corporation, as a general rule, was assessed in the name of the corporation and the corporation paid the taxes thereon in the same manner as an individual. Art. 4688. This applied to banking corporations. In 1885, presumably for the reason that such corporations were evading the law or had some undue advantage under it, the statute was amended as to companies incorporated for banking purposes and it was provided in effect that such corporations should rendei 'or taxation their real estate only and that the shareholders should rei ;r their respective shares in the corporations and should pay the taxes iereon. The shareholder, in estimating the value of his shares for taxation, was allowed a proportionate deduction for the value of real estate rendered by such corporation itself. Laws 1885, p. 106. This law has ever since been continued in force. Rev. Stats. 1895, art. 5080. Besides, under the Revised Statutes of 1879, article 4684, every banker, broker, dealer in exchange, and stock jobber was required, in listing his property, to furnish a more specific statement as to its money, credits, and liabilities than was required of the ordinary taxpayer. The same law, with some amendments relating especially to national banks, exists to-day. Laws 1895, p. 37. In the light of these laws, let us carefully note the language of section 134. "The city council shall have power to assess the property and shares of corporations, companies, banks, and such other institutions as the same are or may be assessed by the State laws," etc. It being the general rule under the State law that a corporation should render for taxation and should pay the taxes upon all its property subject to taxation, and exception having been made in case of banking corporations requiring them to render only their real estate and the shareholders to render their shares, it is evident that in conferring power upon the city council "to assess the property and shares of corporations" the Legislature had in mind the exception as to banking corporations and that it was their purpose to authorize the assessment of the shares of such corporations in the manner of assessments under the State law. The words "are or may be" also indicate that it was the intention to confer the power to follow the State law in case an exception should thereafter be made as to any other class of corporations. The mention of "banks and such other institutions" (meaning, as we think, such other institutions

of a like character) also tends to show that the purpose was to authorize the council to require such institutions to make the same character of statement as to their assets and liabilities as was required of such institutions under the statutes we have previously cited. The purpose of these statutes was not to confer special privileges upon banking corporations, bankers and the like, but was to impose duties upon them so as to prevent evasions of the law and to secure that equality and uniformity of taxation which the Constitution enjoins. Hence, in our opinion, the Legislature, in enacting section 134 of the charter of the city, did not intend to make it obligatory but to grant a discretionary power. But we also think that the section does not apply to any other corporations, except such as were made by the State law subject to especial requirements as to the mode of assessing their assets.

Our conclusion upon this branch of the case is that the city council had the power to require the franchise of a street railway company to be assessed separately from its tangible property.

But it is insisted on behalf of defendant in error that since under the ordinances by which defendant in error acquired the right to operate its line over the streets of the city, it is required to pay an annual sum for the privilege, it can not be held liable to pay a tax for the franchise. In other words, the contention seems to be that the sums required to be paid annually are a franchise tax or are in lieu of such tax, and that the exaction of the tax now in question is double taxation. As to that matter, the findings of the trial court are as follows:

"2. Its (meaning the plaintiff's) right so to operate over the streets upon which its cars were being run in the years 1898 and 1899 was secured to it by its charter and by certain ordinances of the city of Dallas and of the city of East Dallas, a municipal corporation which was annexed to the city of Dallas in the year 1889, each of said ordinances granting the right only as to the street or streets or parts of streets named in such ordinances.

"3. By the terms of some of said ordinances, the street railway company is required to pay annually to the city a certain fixed sum of money for the privilege therein granted; and in some of these ordinances, the fixed annual charge so imposed is called a franchise tax; in others it is called a bonus, and in still others it is simply imposed without being called by any name. It is not stipulated in any of these ordinances that the said annual charge therein imposed shall be in bar of nor in lieu of an ad valorem tax on plaintiff's property or any part thereof. The aggregate of these fixed annual charges is between $2600 and $2700 per annum."

It is clear that the ordinances which simply impose the annual payment as a condition of the grant and those which call such payment a bonus do not import a contract for exemption from taxation of the franchises granted. As to those in which the annual payments are called a franchise tax, the construction is not so clear. But we hardly think that such designation of itself is sufficient to show such clear and unmis-

takable purpose to contract for an exemption from taxation as the authorities hold necessary to show a contract for such exemption. Railway v. Pennsylvania, 21 Wall., 492. But we are not called upon to decide that question in this case. It was held by this court in the case of the City of Austin v. The Austin Gas Company, 69 Texas, 180, that in the absence of legislative authority, a city had no power either to exempt property from taxation or to contract for a commutation of taxes legally assessable upon it. We have been referred to no provision in the charter of the city of Dallas or that of East Dallas which gives such authority, and we take it for granted that none exists. It would seem, however, that the fact that the defendant in error is required to pay a sum annually for the use of the street is an important matter to be considered in assessing the value of its franchise. It is evident that a franchise burdened with such an exaction is not as valuable as it would be did no such burden exist. But the question of the correctness of the valuation is not before us in this case.

But the point is also made that the assessment in this case is also illegal for the reason that, as the court finds, the franchises were not assessed in the name of the plaintiff company but in that of the companies to whose rights it has succeeded. But the defendant in error was the appellant in the Court of Civil Appeals and failed to assign the ruling upon that question in that court. Therefore, the error, if eror it were, was waived and the question is not before us for determination.

For the reasons given, we are of the opinion that the judgment of the Court of Civil Appeals should be reversed and that of the District Court should be affirmed, and it is accordingly so ordered.

*Reversed and judgment of District Court affirmed.*