## CITY OF EL PASO v. TEXAS & P. RY. CO.
### No. 2720.

Court of Civil Appeals of Texas. El Paso.
Oct. 20, 1932.

Rehearing Denied Nov. 10, 1932.

J. H. McBroom, City Atty., and Frank B. Clayton, Asst. City Atty., both of El Paso, for appellant.

Touchstone, Wight, Gormley & Price, of Dallas, and S. N. Russell, of El Paso, for appellee.

**WALTHALL, J.**

The city of El Paso, Tex., brought this suit against the Texas & Pacific Railway Company to recover a certain balance of taxes, penalties, and interest, alleged to be due by the defendant railway company and delinquent for the years 1925, 1926, 1927, and 1928, totaling $16,354.09.

The record shows that the defendant company had rendered its properties for taxation during each of the years involved in the controversy for a total assessed valuation of $477,480, which sum included nothing for the value of the matter involved in the suit, that is, for the value of what the plaintiff, city of El Paso, alleges to be an ad valorem tax for each of the several years stated, but, to distinguish the taxes sued for from the ad valorem taxes rendered and paid for by the defendant company, the taxes sued for might be further designated and described as the value of the franchise or right which the defendant company had by permission of the city of El Paso through ordinances granting the right of use in such parts or portions of the public streets of the city of El Paso upon which the defendant company's railroad tracks might be laid and its trains operated, and upon which defendant's tracks were laid and its trains operated, and which the city of El Paso submits to be a part of defendant company's right of way and roadbed when so used, under article 7168 of the Revised Statutes of this state, and subject to an ad valorem taxation by the city of El Paso.

The city of El Paso's petition is quite lengthy, and we state only such of it as seems pertinent to the point at issue in this suit.

The defendant company and the board of equalization of the city of El Paso agreed upon the tangible value of the property of the company, and fixed same at $477,400, and for which same was rendered, excluding, however, the question of whether or not the parts of the city streets occupied by the company and upon which its railroad tracks are laid by permission under city ordinances were subject to an ad valorem tax.

The city of El Paso claimed that the parts of its streets occupied and used by the company and upon which it had laid its tracks and over which it ran its trains by permission of the city ordinances were taxable by the city, and the board of equalization, over the company's protest, assessed against the company an additional valuation each year of $164,400, as the value of the rights of the company to occupy the streets of the city as alleged.

The defendant company has paid the city the taxes for each of the years on all of its property subject to an ad valorem tax except that embraced in this suit, as above stated.

The defendant company submits in its answer as a sufficient defense to the city's claim that the rights conferred by city ordinances on the railway company to use certain streets in the city amount to and are parts of defendant's intangible assets, and are and were not subject to an ad valorem tax under article 7168 of our Civil Statutes, such right and use not being a right of way or roadbed within the contemplation of said article of the statute.

The defendant company makes the further contention that, if said easement or franchise were subject to an ad valorem tax by the city, the method of arriving at such valuation of such easements for taxation purposes was such that a fair valuation of such rights could not be obtained.

The case was tried to the court without a jury, and judgment was entered in favor of the defendant, from which the city prosecutes this appeal.

**Opinion.**

The trial court made the following findings of fact:

**"Findings of Fact.**

"I. For the years 1925, 1926, 1927 and 1928, the property of the defendant was assessed by the city, as '2.77 miles of main line, etc., at $229,931.00 per mile.' In arriving at this valuation the City, as an element thereof, valued the right of defendant railroad to operate its trains, and maintain its tracks over and through certain specific streets and alleys of the City, at the sum of $164,400.00. When the taxes were due for the years in question, defendant tendered to the city an amount in payment thereof, less the taxes on the value to the extent of $164,400.00, which as aforesaid, was contended by the City to represent the value of said right of way.

"II. The ordinances levying city taxes under which plaintiff seeks to collect the taxes herein, were duly and legally passed and were, and are, in all respects, valid and legal ordinances.

"III. It is undisputed that if said element of value was properly taxable and properly assessed, that for the year 1925 the defendant owes $3,109.07 taxes and $1,400.05 penalty and interest, making a total of $4,509.12; for the year 1926, $3,103.48 taxes and $1,087.33 penalty and interest, making a total of $4,190.81; for the year 1927, $3,188.40 taxes and $798.10 penalty and interest, making a total of $3,986.50; for the year 1928, $3,188.40 taxes and penalty and interest in the amount of $479.26, making a total of $3,667.66.

"IV. The value of the right of way, that is the easement arising by virtue of the franchises granted by the city of El Paso, was valued for the purpose of taxation in relation to the abutting land on either side of the

street. The value per square foot of the right of way, that is the street, was taken at fifty percent of the value per square foot of said abutting land. The value of the abutting property was estimated upon the basis of its market value. There is and was, no actual nor logical relationship between the value of the street as land held in fee, and the value of defendant's franchises or easements. The standard used by the assessing authorities could not reflect in any fair degree of approximation the true value of the right they sought to tax.

"V. The assessing officers of the City endeavored, in good faith, in all the assessments in question, to arrive at a fair valuation of the property sought to be taxed."

There is no dispute as to findings 1, 2, 3, and 5. We will later in the opinion discuss the propositions as to the fourth finding.

The plaintiff city's first two propositions submit: That portion of a public street within an incorporated city occupied by the tracks and superstructures of a railway, and used by a railway for the operation of its trains, constitutes part of the railway's "right of way," and a part of the railway's "roadbed" within the meaning of article 7168, Revised Civil Statutes 1925, and is taxable as such by such incorporated city.

The defendant company denies that the portion of the public street within an incorporated city occupied by the tracks and superstructure of a railway for the operation of its trains constitutes part of the railway's "right of way" or "roadbed," and submits that the right granted by the city to so occupy the street constitutes intangible assets of the railway company, and can be taxed only as such, and only as provided by the statutes dealing with the taxation of the intangible assets of a railroad company.

Article 1175 of the Revised Civil Statutes, under title 28, referring to cities, towns, and villages, and enumerating certain powers of cities, and which article has been adopted as part of the charter of the city of El Paso, provides by the eighth subdivision of said article as follows: "To provide for the mode and method of assessing taxes, both real and personal, against any person and corporation, including the right to assess the franchise of any public corporation using and occupying the public streets or grounds of the city, separately from the tangible property of such corporation."

Article 7168, Revised Civil Statutes, under title 122, referring to taxation, provides:

"Every railroad corporation in this State shall deliver a sworn statement, on or before the thirtieth day of April of each year, to the assessor of each county and incorporated city or town, into or through which any part of their road may run or in which they own or are in possession of real estate, a classified list of all real estate owned by or in possession of said company in said county, town or city, specifying:

"1. The whole number of acres of land, lot or lots, exclusive of their right of way and depot grounds, owned, possessed or appropriated for their use, with a valuation affixed to the same.

"2. The whole length of the railroad and the value thereof per mile, which valuation shall include right of way, roadbed, superstructure, depots and grounds upon which said depots are situated, and all shops and fixtures of every kind used in operating said road.

"3. All personal property of whatsoever kind or character, except the rolling stock belonging to the company or in their possession in each respective county, listing and describing the said personal property in the same manner as is now required of citizens of this State."

It will be observed that the article provides that there shall be rendered to the city assessor "the whole length of the railroad and the value thereof per mile, which valuation shall include right of way, roadbed, superstructure, depots and grounds upon which said depots are situated, and all shops and fixtures of every kind used in operating said road."

The question presented, under the above findings of the court, in view of the articles of the statutes copied above, seems to be: Is the right given by the city of El Paso to the defendant company to lay its railroad tracks upon the streets of the city, and to operate its trains thereon, and, when the company has accepted, to act upon such right and has laid its tracks upon the streets and operated its trains upon the streets, the grant of such franchise of a tangible, corporeal right, a property right, as distinguished from an intangible incorporeal asset, and not taxable by the city. If such right given by the city to the defendant company is a franchise of a tangible right, a property right, the first article quoted above provides for the mode and method of its assessments for taxation by the city. If the grant by the city of such franchise is a taxable right by the city, not being elsewhere included in any property right, it must be found in defendant's "using and occupying the public streets or grounds of the city," as provided in said article 1175, subd. 8. The only way defendant uses and occupies the public streets of the city, as involved in this controversy, is by its right of way or roadbed used in operating said road.

Article 7168 provides for the rendition to the assessor of the city a classified list of all real estate owned or possessed by it, specifying "the value thereof per mile, which

valuation shall include right of way, roadbed" used in operating said road.

■ The above two statutes we think indicate clearly the purpose of the Legislature to provide for the assessment for taxation of the "franchise" of the defendant in its use made of the public streets, and to fix the value thereof per mile of its right of way used in operating its road. The expressions used in the quoted statutes of "right of way" and "roadbed" in the connection in which they are used necessarily mean and are used to describe the strips of land which the defendant company in the exercise of its franchise, has taken in the public streets upon which it has laid its railroad tracks, and laid its material in place. The above statutes being specific in relation to the manner and method of taxation of the properties specified, the general statutes would be inapplicable, and it was so held in State v. St. Louis & S. W. Ry. Co., 43 Tex. Civ. App. 533, 96 S. W. 69.

We think the views above expressed are sustained by the above-quoted statutes. See, also, Western Union Telegraph Co. v. City of Houston (Tex. Civ. App.) 192 S. W. 577, and cases cited. It is there said that there can be no question that a franchise granted by the city of Houston to the telegraph company to use its streets for the erection of its lines is a species of property taxable as such.

In Figg v. L. & N. R. R. Co., 116 Ky. 135, 75 S. W. 269, 270, the Supreme Court of Kentucky said: "It is not the intangible right to use it, but the strip of land which the railroad company appropriates for its use, and upon which it builds its roadbed, is its right of way."

The case of South Nashville St. R. Co. v. Morrow, Trustee, by the Supreme Court of Tennessee, 87 Tenn. 406, 11 S. W. 348, 349, 2 L. R. A. 853, is in point in which it is said: "The right of way in the streets of Nashville is an easement in realty, and is assessable as realty," and refers to Desty on Taxation, and cited cases. See, also, Kansas City, M. & O. R. Co. of Texas v. City of Sweetwater, 104 Tex. 329, 137 S. W. 1117; Galveston & W. R. R. Co. v. City of Galveston (Tex. Civ. App.) 155 S. W. 273.

■■ The court found that the ordinances levying city taxes under which the city seeks to collect the taxes were duly and legally passed, and were and are in all respects valid and legal ordinances; and found that, if said element of value was properly assessed, for each of the several years the taxes, penalties, and interest would be as stated in the finding. The court further found that the assessing officers of the city endeavored, in good faith, in all the assessments in question,

to arrive at a fair valuation of the property sought to be taxed. The court, however, as in the fourth finding of fact as copied above, found fault with the method of arriving at the value of the right of way, for the purpose of taxation, and so found that the standard used by the assessing authorities did not reflect in any fair degree of approximation the true value of the right they sought to tax.

From the findings made the court concluded (a) that the easement, arising by virtue of the franchises granted by the city over its streets and alleys, does not constitute part of the right of way within the meaning of subdivision 2 of article 7168; (b) that, if said easement was taxable, the method of arriving at such valuation for taxation was such that a fair valuation thereof could not be obtained, and so adjudged that the city take nothing by its suit.

We have discussed the question embraced in the first part of the court's conclusion. The second part of the conclusion was evidently arrived at by reason of the court's fourth finding.

Conceding that the court's fourth finding is supported by the evidence, and that the true valuation of the right of way could not be arrived at by the method used, the record shows that the values sued for were the values arrived at and fixed by the board of equalization. From the view we take of the question, we need not discuss the city's method of arriving at the taxable value of the right of way. Article 7212, R. C. S., after prescribing the powers and duties of the board of equalization in fixing the valuation of property for taxation, provides that the action of the board in fixing such value shall be final. It is settled in this state that the board of equalization is a legal body, and its valuation of property is final and conclusive, in the absence of abuse of discretion, and can be attacked only directly through the adjudication of a court possessed with power to inquire into the justice of the valuation. Zachry v. City of Uvalde (Tex. Civ. App.) 24 S.W.(2d) 517, affirmed (Tex. Com. App.) 42 S.W.(2d) 417. Here the court finds "it is undisputed that if said element of value was properly taxable and properly assessed for the years involved," the defendant owes "the amount sued for, thus eliminating any question of proper valuation."

We have concluded that the court was in error in holding that the property involved in the controversy was not taxable by the city, and the judgment based thereon that the plaintiff recover nothing by its suit. The case is reversed and judgment here entered that the city of El Paso recover of defendant railway company for the total amount sued, with interest from the date of said judgment.