## TEXAS & PACIFIC RAILWAY COMPANY V. CITY OF EL PASO.

No. 6435.  Decided July 24, 1935.
Rehearing overruled October 23, 1935.
(85 S. W., 2d Series, 245.)

*Touchstone, Wight, Gormley & Price, T. D. Gresham,* and *R. S. Shapard,* all of Dallas, for plaintiff in error.

That the methods adopted by the city to arrive at the valuation of the franchise or easement were unjust and arbitrary, resulting in injury to the railway company and in fixing values having no relation to the actual values sought to be taxed. Rowland v. City of Tyler, 5 S. W. (2d) 756; New Jersey Bell Tel. Co. v. State Board, 280 U. S., 338, 50 Sup. Ct., 111; Uvalde Rock Asphalt Co. v. Asphalt Belt Ry. Co., 267 S. W., 688.

*J. H. McBroom* and *Frank B. Clayton,* both of El Paso, for defendant in error.

The "right of way" of a railway along a public street is taxable by an incorporated city. Kansas City, M. & O. Ry. Co. v. City of Sweetwater, 104 Texas, 329, 137 S. W., 1117; Western U. Tel. Co. v. City of Houston, 192 S. W., 577; Bell County v. Hines, 219 S. W., 556.

*R. E. Rourer, Geo. C. Kemble, J. M. Floyd, R. B. Young, Jr.,* all of Fort Worth, and *Terry, Cavin & Mills,* of Galveston, filed written arguments, as amicus curiae.

MR. JUSTICE SHARP delivered the opinion of the court.

The City of El Paso filed this suit against the Texas & Pacific Railway Company to recover certain balances of taxes, penalties, and interest, claimed to be due by the railway company for the years 1925, 1926, 1927, and 1928, aggregating the sum of $16,354.09. The trial was before the court without a jury, and judgment was entered in favor of the railway company. An appeal was taken to the Court of Civil Appeals at El Paso, and the judgment of the trial court was reversed, and judgment rendered in favor of the city against the railway company for the full amount sued for, with interest thereon from the date of judgment. 53 S. W. (2d) 821. A writ of error was granted to review the judgment of the Court of Civil Appeals.

The City of El Paso contends that that portion of a public street within an incorporated city occupied by the tracks of a railroad company, and used by such railroad for the operation of its trains, constitutes part of the railroad's right of way and roadbed, within the meaning of Article 7168, Vernon's

Annotated Texas Civil Statutes, and is taxable as such by an incorporated city.

On the other hand, the railway company contends that the Court of Civil Appeals erred in holding contrary to the conclusion of the trial court, that the special franchises sought to be taxed herein are taxable by the City of El Paso as the right of way under Section 2 of Article 7168. It is also contended that the city undertook to tax the easements granted the railroad, which was illegal; that the easements, if taxable at all, are intangible assets, which can only be taxed by the State under the Intangible Assets Law; that said tax is discriminatory, because the public generally is not taxed for the use of streets by automobiles, trucks, etc.; and that the valuation placed upon the said right of way was arbitrary and excessive.

The railway company operates under a Federal charter, and is engaged in interstate commerce. The City of El Paso, by virtue of certain ordinances, granted to the railway company the privilege of building and using its tracks in the public streets. The ordinances refer to this right as the "railroad's right of way." These rights have been enjoyed by the railway company for many years. There was no dispute about the rendition and valuation of the physical or tangible property of the railway company. The company rendered its property during the years in controversy for a total assessed valuation of $477,480.00. This amount included the ties, rails, etc., used in its tracks or right of way. Independent of the right of way, or easement, or franchise, that was the value agreed upon, and taxes were paid upon this amount by the railway company. The board of equalization arrived at the total amount of $164,400.00 for the value of the easement, right of way, or franchise, by taking the abutting properties and figuring the value of the ground and taking 50 per cent. off it. On certain streets a 100 per cent. value was charged, and on cross streets or intersections a 50 per cent. value was charged. The railway company vigorously protested this assessment. The trial court found that in making the assessment the board of equalization took into consideration as an element thereof "the right of the railway company to operate its trains and maintain its tracks over and through certain specific streets and alleys of the city at the sum of $164,400.00."

The following constitute the findings and conclusions of the trial court:

"FINDINGS OF FACT.

"For the years 1925, 1926, 1927 and 1928, the property

of the defendant was assessed by the city, as '2.77 miles of main line, etc., at $229,931.00 per mile.' In arriving at this valuation the City, as an element thereof, valued the right of defendant railroad to operate its trains, and maintain its tracks over and through certain specific streets and alleys of the city, at the sum of $164,400.00. When the taxes were due for the years in question, defendant tendered to the city an amount in payment thereof, less the taxes on the value to the extent of $164,400.00, which as aforesaid, was contended by the city to represent the values of said right of way.

"II.

"The ordinances levying city taxes under which plaintiff seeks to collect the taxes herein, were duly and legally passed and were, and are, in all respects, valid and legal ordinances.

"III.

"It is undisputed that if said element of value was properly taxable and properly assessed, that for the year 1925 the defendant owes $3,109.07 taxes and $1,400.05 penalty and interest, making a total of $4,509.12; for the year 1926, $3,103.48 taxes and $1,087.33 penalty and interest, making a total of $4,190.81; for the year 1927, $3,188.40 taxes and $798.10 penalty and interest, making a total of $3,986.50; for the year 1928, $3,188.40 taxes and penalty and interest in the amount of $479.26, making a total of $3,667.66.

"IV.

"The value of the right of way, that is the easement arising by virtue of the franchises granted by the city of El Paso, was valued for the purpose of taxation in relation to the abutting land on either side of the street. The value per square foot of the right of way, that is the street, was taken at fifty per cent of the value per square foot of said abutting land. The value of the abutting property was estimated upon the basis of its market value. There is and was no actual nor logical relationship between the value of the street and land held in fee, and the value of defendant's franchises or easements. The standard used by the assessing authorities could not reflect in any fair degree of approximation the true value of the right they sought to tax.

"V.

"The assessing officers of the City endeavored, in good faith, in all the assessments in question, to arrive at a fair valuation of the property sought to be taxed.

"CONCLUSIONS OF LAW.

"An easement, arising by virtue of franchises granted by a city over its streets and alleys, does not constitute part of the right of way within the meaning of Section 2 of Article 7168 of the Revised Statutes. If said easement was taxable, the mode of arriving at such valuation for taxation was such that a fair valuation thereof could not be obtained."

The determination of this case involves two questions: (1) Was the franchise or easement, or both, granted by the City of El Paso to the railway company for the use of its streets taxable; and (2), if so, has the city properly and lawfully taxed them?

Certain fundamental rules have been announced by the Legislature with respect to the taxation of railroad properties in this State. For the taxation of the intangible assets of a railway company the Legislature has enacted Chapter 4, Title 122, Articles 7098-7116, Vernon's Annotated Texas Statutes, which provides for a State Tax Board to ascertain the true value of the intangible assets of a railway company for taxation, and to apportion such values for taxation to the various counties through which the lines of the railroad run. See State v. Texas & P. Ry. Co. et al. (Com. App.), 62 S. W. (2d) 81; Missouri, K. & T. Ry. Co. v. Shannon, 100 Texas, 379, 100 S. W., 138, 10 L. R. A. (N. S.), 681; Lively v. Missouri K. & T. Ry. Co., 102 Texas, 545, 120 S. W., 852. The City of El Paso was not authorized to determine the values for taxation of the intangible assets of the railway company described in the foregoing statutes.

Our Supreme Court has said:

"Franchises are defined to be 'special privileges conferred by the government on individuals, and which do not belong to the citizens of the country generally, of common right'." State v. Austin & N. W. R. Co., 94 Texas, 530, 62 S. W., 1050; see, also, 19 Texas Jurisprudence, pp. 875, et seq.

In 19 Corpus Juris., p. 862, the definition and nature of an easement is given in the following language:

"An easement is a liberty, privilege, or advantage without profit, which the owner of one parcel of land may have in the lands of another; or to state it from the opposite point of view, it is a service which one estate owes to another, or a right or privilege in one man's estate for the advantage or convenience of the owner of another estate." See 15 Texas Jurisprudence, pp. 769, et seq., and authorities cited.

■ Municipal corporations derive the power to tax property within their jurisdictions by virtue of authority delegated to them by the State. This authority is found in the Constitution or statutes. The Legislature, subject always to constitutional limitations, may delegate to cities such power. 30 Texas Jurisprudence, pp. 460, et seq. Article 8, Section 5, of the Constitution of Texas provides that

"All property of railroad companies, of whatever description, lying or being within the limits of any city or incorporated town within this State, shall bear its proportionate share of municipal taxation, and if any such property shall not have been heretofore rendered, the authorities of the city or town within which it lies, shall have power to require its rendition, and collect the usual municipal tax thereon, as on other property lying within said municipality."

Article 11, Section 5, of the Constitution, known as the "Home Rule Amendment," and Article 1175, Subdivision 7, R. S., 1925, provide that cities coming within their provisions may levy, assess, and collect such taxes as may be authorized by law or by their charters. Furthermore, the statutes authorize such cities and give them the right to provide for the levying of any general or special ad valorem tax, for any purpose not prohibited by the Constitution or by a general statute. 30 Texas Jurisprudence, p. 465.

The Legislature has enacted certain statutes with respect to the taxation of property belonging to railroads. Article 7168 reads as follows:

"Every railroad corporation in this State shall deliver a sworn statement, on or before the thirtieth day of April of each year, to the assessor of each county and incorporated city or town, into or through which any part of their road may run or in which they own or are in possession of real estate, a classified list of all real estate owned by or in possession of said company in said county, town or city, specifying:

"1. The whole number of acres of land, lot or lots, exclusive of their right of way and depot grounds, owned, possessed or appropriated for their use, with a valuation affixed to the same.

"2. The whole length of the railroad and the value thereof per mile, which valuation shall include right of way, roadbed, superstructure, depots and grounds upon which said depots are situated, and all shops and fixtures of every kind used in operating said road.

"3. All personal property of whatsoever kind or character,

except the rolling stock belonging to the company or in their possession in each respective county, listing and describing the said personal property in the same manner as is now required of citizens of this State. (Acts 1909, p. 373.)"

The State, through the Legislature, has delegated to cities coming under the Home Rule Amendment of the Constitution certain enumerated powers relating to the taxation of property. The City of El Paso has availed itself of this privilege. Article 1175 in part reads:

"Cities adopting the charter or amendment hereunder shall have full power of local self-government, and among the other powers that may be exercised by any such city the following are hereby enumerated for greater certainty:

\* \* \* \* \* \* \*

"8. To provide for the mode and method of assessing taxes, both real and personal, against any person and corporation, including the right to assess the franchise of any public corporation using and occupying the public streets or grounds of the city, separately from the tangible property of such corporation."

The authorities have long recognized that the grant of an easement by a city to a railway company for the use of its streets is considered real estate, and may be assessed and taxed as such. 1 Desty on Taxation, pp. 300, 361, 379, 405; Cooley on Taxation, Vol. 2 (4th ed.), par. 857, p. 1722, and cases cited; South Nashville St. R. Co. v. Morrow, 87 Tenn., 406, 2 L. R. A., 853, 11 S. W., 348; Consolidated Gas Co. of Baltimore City v. Mayor, etc., of Baltimore, et al., 101 Md., 541, 61 Atl., 532, 1 L. R. A. (N. S.), 263, 109 Am. St. Rep., 584, and authorities cited; Figg v. Louisville & N. R. R. Co., 116 Ky., 135, 75 S. W., 269.

The case of South Nashville St. R. Co. v. Morrow, supra, involved the right of the City of Nashville to tax an easement granted the street railway company to use the streets for railway purposes. The Supreme Court of Tennessee, speaking through Justice Lurton, who afterwards became a Justice of the Supreme Court of the United States, in passing upon this precise question, held:

"The right of way in the streets of Nashville is an easement in realty, and is assessable as realty. This is well settled. 1 Desty, Tax'n, 300, 361, 405, 379. In the case of Railway Co. v. City of Chicago, the question as to whether the easement of a street-railway company in the streets of a city

was assessable as property was determined in the affirmative. Concerning such an interest the court said: 'It is true, as urged by counsel, that the railway company has not become the owner of any portion of these streets in fee, but it has certainly through its charter * * * and its contract with the city acquired a property in them of a most valuable character, which neither the legislature nor the city can take away without the consent of the company, and capable, like other property, of being sold and conveyed. The city council has made a contract with the company, by which it has granted to the latter what is substantially a leasehold interest in a portion of this street for a number of years. It has acquired rights in the street which neither any other person, or company, nor the general public, possess.' 90 Ill., 573.''

In the course of the opinion that learned judge further said:

"The franchise to be a corporation is property, and as such must be assessed. It ought, however, to be assessed with the tangible property of the company, and not separately. Here it has been assessed along with a valuable easement, an interest in realty, and we see no reason for quashing such an assessment as void.''

■ There exists a clear distinction between a franchise and an easement. The grant of a franchise does not carry with it an interest in land. It is a privilege which may be granted and acquired without involving the ownership of land. On the other hand, an easement is essentially an interest in land. It is a dominant estate imposed upon a servient estate. The privilege of using the streets for railway purposes is a franchise. The actual occupation of the streets for railroad purposes by virtue of ordinances is an easement. See 12 R. C. L., pp. 178, 179.

■ That corporate franchises are property and subject to taxation is now well settled. Southwestern Tel. & Tel. Co. v. City of San Antonio et al., 32 Texas Civ. App., 101, 73 S. W., 859, writ denied; City of Dallas et al. v. Dallas Consol. Elec. St. Ry. Co., 95 Texas, 268, 66 S. W., 835; State v. Gulf, Houston & S. A. Ry. Co., 100 Texas, 153, 97 S. W., 71; Western Union Tel. Co. v. City of Houston, 192 S. W., 577 (Civ. App.); Owensboro v. Cumberland Tel. Co., 230 U. S., 64, 33 Sup. Ct., 990, 57 Law Ed., 1389; 61 C. J., par. 242, pp. 252-255.

In the case of Owensboro v. Cumberland Tel. Co., supra,

the Supreme Court of the United States said:

"That an ordinance granting the right to place and maintain upon the streets of a city poles and wires of such a company is the granting of a property right has been too many times decided by this court to need more than a reference to some of the later cases: Detroit v. Detroit Citizens' Street R. Co., 184 U. S., 368, 395, 46 L. Ed., 592, 610, 22 Sup. Ct. Rep., 410; Louisville v. Cumberland Teleph. & Teleg. Co., 224 U. S., 649, 661, 56 L. Ed., 934, 939, 32 Sup. Ct. Rep., 572; Boise Artesian Hot & Cold Water Co. v. Boise City, opinion just handed down. (230 U. S., 84, 57 L. Ed., 1400, 33 Sup. Ct. Rep., 997.) As a property right it was assignable, taxable, and alienable."

From a reading of the foregoing provisions of the Constitution and of the statutes, we find that there has been delegated to cities coming under Article 1175 the power to provide the method for assessing taxes, both real and personal, against a railway company, including the power to assess the franchise of any railroad using the public streets of a city, separate from the tangible property of such railroad. The franchise granted for the use of the streets has been accepted and utilized by the railway company. For practical tax purposes the city may now treat the franchise and easement as a unit; or the city may require the franchise to be taxed as a part of the tangible property of the railway company, considered as a whole, or be separately valued for taxation as a distinct item of property.

It is contended that this Court, in the case of State v. Austin & N. W. R. Co., 94 Texas, 530, 62 S. W., 1050, held that a franchise granted to a railroad company by a city could not be taxed by such city, because franchise rights and privileges are intangible assets, and not subject to taxation by municipal corporations; and that the holding in that case should control the decision of this case. The contention was made in the case of City of Dallas et al. v. Dallas Consol. Elec. St. Ry. Co., 95 Texas, 268, 66 S. W., 835, that the City of Dallas did not have the authority under its charter to tax the franchise of a street railway company as a separate item in the rendition of its property for taxation. Chief Justice Gaines wrote the opinions for the Court in both cases, and in answer to the contention made said:

"Construing our general laws in reference to the method of rendering the property of railroad companies for taxation for state purposes, we held in the case of State v. Austin &

N. W. R. Co., 94 Texas, 530, 62 S. W., 1050, that the franchise of a railroad was not assessable as a separate distinct entity from its physical property. But we neither held that such franchise was nonassessable, nor that under the statutes then in question its value was not to be estimated in determining the valuation of the property of the company for the purposes of taxation. Here we have a different question. The city of Dallas is incorporated by special law, and the question is whether the charter of the city authorizes the tax upon the company's franchise and its assessment as a separate item of property."

In construing the provisions of the city charter relating to the authority of a city to levy a tax upon the franchise of a street railway, he said:

"It is equally clear, as we think, that its only proper construction should be that the city counsel were empowered to require the assessment of such franchise to be made either as a part of the tangible property of the corporation, and to be estimated in assessing the value of the whole, or to be separately assessed, and valued as a distinct article of property."

The case of State v. Austin & N. W. R. Co., supra, was re-examined in the case of State v. Gulf, H. & S. A. Ry. Co., 100 Texas, 153, 97 S. W., 71, and Justice Brown, speaking for the Court, after quoting from the opinion in that case, said:

"The fact that the franchise is subjected in this state to an ad valorem tax as property does not militate against the right to tax the persons or the corporations using that property as an occupation any more than would the taxing of the physical property of the railroads, as the tracks, right of ways, cars, etc., operate to prevent the imposition of occupation taxes for the use of them as instruments of transportation."

It is contended, and the Court of Civil Appeals so held, that the values sued for by the City of El Paso were the values arrived at by the board of equalization, and that in the absence of fraud or the abuse of discretion, its valuation of property is final. The trial judge in his findings, which are copied above, stated the method pursued by the board of equalization to determine the value of the easement and franchise granted to the railway company by the city, and found: (a) "There is and was no actual nor logical relationship between the value of the street and land held in fee, and the value of defendant's franchises or easements. The standard used by the assessing authorities could not reflect in any fair degree of approximation the true value of the right they sought to

tax;" and (b), "If said easement was taxable, the mode of arriving at such valuation for taxation was such that a fair valuation thereof could not be obtained."

Article 8, Section 1, of the Constitution reads as follows:

"Taxation shall be equal and uniform. All property in this state, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law."

■ The foregoing provision of the Constitution controls cities exercising the taxing power. Rowland v. City of Tyler (Com. App.), 5 S. W. (2d), 756; City of Austin v. Austin Gas-Light & Coal Co., 69 Texas, 180, 7 S. W., 200; Garza Land & Cattle Co. v. Redwine Independent School Dist. (Texas Civ. App.), 282 S. W., 906; Town of Pleasanton v. Vance (Com. App.), 277 S. W., 89.

The case of Rowland v. City of Tyler, supra, involved the question as to the power of courts to review the acts of a board of equalization in determining values of property for taxation, and it was contended there, as here, that the action of the board of equalization was final. In that case the board determined the value of the property for taxation upon a rental basis. Here it is based upon the value of abutting land. Judge Leddy, speaking for the Court, in a clear and able opinion, said:

"It is well established that the term 'value,' as used in the Constitution, means the reasonable cash market value. Lively v. M. K. & T. Ry. Co., 102 Texas, 545, 120 S. W., 852; City of El Paso v. Howze (Texas Civ. App.), 248 S. W., 99; Porter v. Langley (Texas Civ. App.), 155 S. W., 1042; Power v. Andrews (Texas Civ. App), 253 S. W., 870; R. C. L., vol. 26, p. 244.

"If, as is held, the reasonable cash market value is the true criterion, then it follows that if a board of equalization adopts a plan or scheme which is fundamentally wrong by which values are arbitrarily determined, then the plain provision of the Constitution has been violated.

\* \* \* \* \* \* \*

"As a general rule, the decision of a board of equalization upon a particular assessment, in the absence of fraud or illegality, is conclusive. Cooley on Taxation (2d. Ed.), p. 218. Such valuation cannot be set aside merely upon a showing that the same is, in fact, excessive. If the board fairly and honestly endeavors to reach a correct valuation, a mistake upon

its part under such circumstances is not subject to review by the courts. Sunday Lake Iron Co. v. Wakefield, 247 U. S., 350, 38 S. Ct., 495, 62 L. Ed., 1154; Druesdow v. Baker (Texas Com. App.), 229 S. W., 493.

"Our Supreme Court, in the last-named case, declared under what circumstances the judgment of a board of equalization may be attacked, giving among others, 'the adoption of a fundamentally wrong principle or method, the application of which substantially injures the complainant'."

After stating the facts involved there, it was further said:

"It therefore affirmatively appears that the plaintiff in error has suffered an injury because of an excessive valuation of her property brought about through the adoption by the board of equalization of a method of fixing valuations by an illegal and arbitrary scheme, instead of using the lawful method of giving full and fair consideration to all proper elements which should be considered in arriving at the true value of the property."

■ No rigid standard governing the method to be used by cities in this State in determining the value of franchises and easements for taxation has been declared. In the absence of any rule prescribed by the Legislature to determine the true value for taxation of franchises and easements, certain essential things should be taken into consideration,—namely, (1) the period of time for which the franchises or easements may run; (2) the practical uses to which they can be put; and (3) the profit which by proper management can be made out of the use of them. The dominant purposes of the law are to avoid double taxation, to ascertain the true value of the property to be taxed, and to make the assessment of taxes on all property equal and uniform.

Thus it clearly appears from the evidence and the findings of the trial court that the method pursued by the board of equalization to determine the value of the franchise and the easement involved here was illegal, arbitrary, and fundamentally wrong,—and did not comply with the rules prescribed by the Constitution and the decisions relating to such matters. Rowland v. City of Tyler, supra, and decisions cited.

■ The Court of Civil Appeals reversed the judgment of the trial court and rendered judgment in favor of the City of El Paso for the amount of taxes sued for. The Court of Civil Appeals, under the decisions of this Court, was not justified in reversing and rendering the cause, unless it appeared as a

matter of law that there was no evidence of probative force to sustain the findings of the trial court. First State Bank v. Metropolitan Casualty Ins. Co., 79 S. W. (2d) 835; Nat'l Bond & Mortgage Co. v. Davis (Com. App.), 60 S. W. (2d) 429, 432; Gulf, H. & S. A. Ry. Co. v. American Grocery Co., 122 Texas, 1, 7, 13, 36 S. W. (2d) 985, 990, and cases cited. We think the evidence sustains the findings of the trial court.

It follows from what has been said that a franchise and an easement granted by a city to a railway company for the use of its streets are subject to taxation. But, since it appears that the railway company has paid to the City of El Paso the amount of taxes due for the years above described, on all of its property, except the amount in question; and it further appearing, as found by the trial court, that the assessment of the property involved here was violative of the fundamental rules governing the assessment of property for taxation, it would serve no useful purpose to remand this cause. Therefore, the judgment of the Court of Civil Appeals will be reversed, and the judgment of the trial court affirmed.

Opinion delivered July 24, 1935.

Rehearing overruled October 23, 1935.